Yorks *v.* Peck.

---

[Monroe General Term, March 7, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]

---

Yorks *vs.* Peck and others, adm'rs, &c. and Lamphire.

Where a note is made by two persons, which in terms is joint only, upon the death of one of the makers, the surviving maker only is liable upon it ; unless it appears by direct proof, or the facts of the case warrant the inference, that the parties intended it should be joint and several.

If such an intention is expressly proved, or may be inferred from the transaction, the note will be treated as if it was joint and several ; and in that case the personal representatives of the deceased maker are liable for its payment.

So held where the discharge of a mortgage, to effect which the note was given, was admitted by the deceased maker to be an accommodation to him, and the note was signed by him under an arrangement with his co-maker that a portion of the proceeds of the sale of the mortgaged premises, should be applied in discharge of a liability he had assumed for his co-maker, and it was afterwards so applied.

In all cases of a joint note given upon a joint loan of money, or a joint liability of any kind, it will be presumed it was intended the note should be several as well as joint ; and effect will be given to it according to that intention.

Yorks *v.* Peck.

But where the deceased maker was a mere *surety,* such a presumption will not be indulged. The responsibility will not in such a case, be extended, without proof of an express agreement.

This was an appeal by the defendants from a judgment entered against them at the circuit, upon the report of a referee. The action was brought against the defendants upon a note in the following words :

" Canandaigua, Aug. 1, 1849. Six months from date, for value received we promise to pay to the order of J. M. Wheeler, at the Ontario Bank, seven hundred and fifty dollars, with interest.

(Signed) Aaron Lamphire.

Reynold Peck."

The note was indorsed to the plaintiff, by the payee, without recourse. The defendants Vinton Peck, R. T. Leach and Nancy Peck, were sued as administrators of Reynold Peck, who died intestate in September, 1849, and Lamphire was sued as the surviving maker. The judgment was for the amount of the note, with interest. The other facts are mentioned in the opinion of the court.

*H. O. Chesebro,* for the appellants. I. Where one of the joint makers of a note or bond dies, there can be no recovery against his estate, at law. The remedy of the holder is against the survivor alone, though he be insolvent. The complaint is based upon that principle, and it is the settled rule of law. (*Chitty on Bills,* 529. 5 *Bac. Ab. Obligation, D.* 4. 7 *Id.* 506, *Appeal.*) II. The holder has no remedy against the estate of the deceased joint maker, except in equity, and upon the presumption of the facts proved, that there was a mistake in making the note joint only. (1 *Story's Eq. Jur.* § 162, *and following sections.*) III. There are but two classes of cases in which courts of equity afford relief against the estate of the deceased joint maker. (1.) Upon satisfactory proof of actual mistake in making the note joint only ; and that the parties actually intended to make it several, but failed to do so, through the inadvertence or ignorance of the draftsman. (2.) In cases where the bond or note was given to secure a joint original liability, or for a joint

loan of money to the makers, as in cases of partners in business. (1 *Story's Eq. Jur.* § 162, *cited above. Sumner* v. *Powell,* 2 *Merivale,* 29. *Rawstone* v. *Parr,* 3 *Russell Ch. Rep.* 539. *Thomas* v. *Frazer,* 3 *Vesey,* 39. *United States* v. *Cushman,* 2 *Sumner,* 435. *Hunt* v. *Rousmanier,* 1 *Peters,* 1. *Minge's Ex'rs* v. *Field,* 2 *Wash. Vir. Rep.* 136. *Weaver* v. *Shryock,* 6 *Serg. & Rawle,* 262.) IV. This case does not come within either of these classes. There is no claim or pretense that there was any mistake in the making of this note, or that it is in any respect other than it was intended to be; and it is admitted by the pleadings that Peck was a mere surety upon the note. V. There is no case in which a recovery can be had against the estate of a deceased joint maker of a note, where there could not be a recovery if no note had been given. There must have been a liability to pay, independent of the note. (*See all the cases above cited.*) VI. To recover against the estate of Peck, the plaintiff must prove the agreement set forth in the complaint, to wit: that Peck received from Lamphire $750 to hold as an indemnity for his liability by reason of signing this note. There is no evidence whatever of any such agreement. The testimony of Wheeler, if it proves any thing, does not allude to any such agreement. The testimony of Lamphire shows that no such agreement was ever made between him and Peck as is set forth in the complaint, or any similar agreement, and that Peck never received a dollar of the proceeds of the sale to Benham. VII. The proof utterly fails to establish the agreement set out in the complaint, and the complaint should be dismissed. VIII. The plaintiff has no claim to the equitable interference of this court. The case shows that he purchased the note after it was due, and upon a speculation, for the purpose of prosecuting it.

*E. G. Lapham,* for the respondent. I. It is conceded that prior to the code there was no remedy except in a court of equity, against the representatives of a deceased joint contractor. The recent case of *Lawrence* v. *Leake's Trustees,* (11 *Paige,* 80, *and* 2 *Denio,* 577,) illustrates the precise rule on the subject.

(*Jenkins* v. *Degroot*, 1 *Caines' Cases*, 121.)  II. In equity the court will presume the instrument was made joint by mistake, except in the case of a naked surety.  (*Carpenter* v. *Provoost*, 2 *Sandf. Rep.* 537.  *Hunt* v. *Rousmanier*, 8 *Wheaton*, 174 *to* 214.)  III. The proofs taken in this case clearly show that the deceased joint contractor was not a mere surety.  On the contrary, the credit was given to him and he received the whole benefit.  Wheeler discharged his debt against Lamphire, and took the promise of him and Peck for the benefit of Peck; for the avails of Wheeler's mortgage were paid to Peck, and applied to discharge his liabilities.  IV. The reason of the rule at law was that one being charged *de bonis prop.* and the other *de bonis test.* they could not be joined, not being liable to the same judgment.  All distinction between actions at law and in equity having been abolished, judgments may now be rendered as decrees were formerly made, charging the defendants in different rights.  There is no necessity for an action at law against the survivor and a separate action aginst the representatives of the deceased contractor.  (*Ricart* v. *Townsend*, 6 *How. Pr. Rep.* 460.  *Report of Com'rs on Code*, 126, *note to sec.* 118, *old section* 98.  *Code, sec.* 118.  *Van Santvoord's Plead.* 120.)

*By the Court*, T. R. Strong, J.  Where a note is made by two persons, which in terms is joint only, upon the death of one of the makers, the surviving maker only is liable upon it; unless it appears by direct proof, or the facts of the case warrant the inference, that the parties intended it should be joint and several.  (7 *Bac. Abr. Bouvier's ed.* 249.  *Story's Eq. Jur.* § 162 *to* 164.  *Bradley* v. *Burwell*, 3 *Denio*, 61.  *Hunt* v. *Rousmanier*, 8 *Wheat.* 174.  1 *Peters*, 1, 16.  *Carpenter* v. *Provoost*, 2 *Sand.* 537.)  If such an intention is expressly proved, or may be inferred from the transaction, the note will be treated as if it was joint and several, and in that case the personal representatives of the deceased maker are liable for its payment.  (*Same cases.*)  In all cases of a joint note given upon a joint loan of money, or a joint liability of any kind, it will be presumed it was intended the note should be several as well as

. ' joint; and effect will be given to it according to that intention. But where the deceased maker was a mere surety, such a presumption will not be indulged; the responsibility will not in such a case be extended without proof of an express agreement. The rule, limiting the liability upon a joint undertaking, on the death of one of the promisors, to the survivor, belongs to the common law; that in respect to reforming the contract, and attaching a liability to the estate of the deceased, belongs to equity; but this court has general jurisdiction both in law and equity.

It is supposed on the part of the plaintiff, that the doctrine of the common law referred to, arose from the inability under that system to enforce a responsibility upon a joint promise against both the survivor and the estate of the deceased joint debtor; the same judgment against the survivor and the representatives not being proper; and that the same rule should not prevail under the code, which authorizes such a judgment as any particular case requires. In this I cannot concur. The principle results from the form of the contract. (7 *Bac. Abr. Bouvier's ed.* 250.) The parties have so contracted. It would add to the liability, which the parties have by their contract assumed, to make the estate of the deceased liable. The only mode in which the liabilty has ever been extended, in equity, has been by reforming the contract upon the idea of a mistake, and making it several as well as joint. (*Authorities above cited.*)

In *Lawrence* v. *The Trustees of the Leake and Watts Orphan House,* (11 *Paige,* 80,) it was decided that the estate of a deceased copartner or joint debtor could not be reached by a suit in chancery, without averring and proving that the surviving debtors were insolvent; that there was no concurrent remedy in equity and at law for the recovery of the debt; and that the statute limiting the time for the commencement of suits which were exclusively of equitable cognizance, did not begin to run until the survivors become insolvent. This decision was affirmed in the late court of errors. (2 *Denio,* 577.) If this doctrine is applicable under the code, it would seem to be fatal to a joint action against a surviving and the representatives of a deceased joint contractor, except in cases where the survivor is

Yorks *v.* Peck.

insolvent. Perhaps the rule was proper only while the equitable and legal jurisdictions were distinct and vested in distinct courts, under the general rule that resort should not be had to a court of equity when there was an adequate remedy at law. It is not necessary in this case to express any opinion upon the question.

The present action is analogous to a suit in equity in the late court of chancery against the representatives of a deceased joint debtor, upon the insolvency of the survivor. The surviving debtor is a proper party. (*Story's Eq. Pl.* § 167. *Wilkinson* v. *Henderson*, 1 *Mylne & Keen*, 582.) No objection was made as to the sufficiency of the proof of insolvency. As the note in question is joint only, it was necessary in order to entitle the plaintiff to recover, that it should appear a several as well as a joint liability was intended. It is shown by the evidence that Jonas M. Wheeler held a mortgage for $750 upon real estate owned by the defendant Lamphire, worth over $1500, which mortgage was the only incumbrance on the premises; that Lamphire entered into an agreement with Charles S. Benham, to convey to him the premises, free of incumbrance, and applied to Wheeler to take other security and release the premises from the mortgage, giving as a reason that he wanted to sell the property and give a clear title. Lamphire proposed to give a note signed by himself and Reynold Peck, the intestate of the other defendants, for the amount due. Some time afterwards Wheeler met Peck and informed him of the application and proposal of Lamphire, and told him that he, Wheeler, would not give up the mortgage and take a note unless it was to accommodate him, Peck. Peck answered, "I don't know, I am on too much for him now; at any rate I shall not go on for him unless I can get the avails of the property." Lamphire subsequently brought and delivered the note in suit to Wheeler, who gave him therefor a discharge of the mortgage. Wheeler afterwards, and before the maturity of the note, transferred it to the plaintiff. The evidence further shows that at the time Peck signed the note, it was agreed between him and Lamphire that the latter should pay, out of the proceeds of the sale to Ben-

ham, an order which Peck had given for Lamphire's accommoda-tion; that at or about this time Peck released his lien upon the premises under a judgment he held against Lamphire as security for signing and indorsing for the latter, upon the like under-standing in regard to the payment of part of the proceeds of the sale to Benham to satisfy the said order; that on the same day the mortgage was discharged, Lamphire conveyed the premises to Benham and received at the time in cash $900 and about that time a note for $600, which sums, with $100 received by him when the agreement of sale was executed, were the consideration of the conveyance; and that three days afterwards the order, amounting to about $950, was paid out of the proceeds of the sale. There is no proof of an express agreement that the liabil-ity of the makers of the note in question should be several as well as joint, but I think the court is bound, upon the facts dis-closed, and under the authority of well established principles, to presume that such was the intention of the parties. In *Hunt* v. *Rousmanier,* (8 *Wheat.* 174,) Chief Justice Marshall says, "the course of the court seems to be uniform, to presume a mis-take in point of fact, in every case where a joint obligation has been given and a benefit has been received by the deceased obligor. No proof of an actual mistake is required. The ex-istence of an antecedent equity is sufficient. In cases attended by precisely the same circumstances, so far as respects mistake, relief will be given against the representatives of a deceased obligor, who had received the benefit of the obligation, and re-fused against the representatives of him who had not received it." Here the intestate was not a mere surety. He was dis-tinctly told, before he signed the note, that the mortgage, for a discharge of which the note was made, would not be given up and a note taken, unless it was to accommodate him. By uniting in the note, thereafter, he virtually requested the discharge of the mortgage, for the note, and conceded that it would be for his accommodation. Besides, the note was signed by him under an arrangement with Lamphire, that a sum larger than the amount of the note, of the proceeds of the sale of the mortgaged premises, with a view to which sale the note was made, should

Yorks *v.* Peck.

be applied in discharge of a liability he had assumed, and it was afterwards so applied. This proves that the transaction was for his accommodation. It is true that the liability referred to was that of a surety, but it was nevertheless a valid debt against him. His responsibility for Peck was not increased, but diminished, by the note. The makers, in effect, purchased Wheeler's lien, for the purpose of a sale of the land, and the application of over $900 of the avails upon the intestate's liability as surety, which purpose was carried out. The release of the lien was at the request of and to benefit both, and both received a benefit from it. A strong equitable obligation against both, and each, to pay the debt to Wheeler, was, in my opinion, thereby created, from which it must be presumed, a several as well as a joint liability upon the note was intended. If Wheeler, at the request of Lamphire and Peck, and to accommodate the latter, had loaned upon their joint note $750, which by agreement between Peck and Lamphire was, with a further sum of $200, to be applied to pay a debt of Lamphire to Peck, and both sums were so applied, it would not be doubted, I think, that there was an equity in favor of Wheeler against each, from which the court would attach to each a several liability upon the note. That, in principle, is this case.

The evidence is somewhat variant from the allegations in the complaint, in regard to the agreement between Peck and Lamphire upon which the note was signed by Peck; but no objection on that account appears to have been made at the trial, and it is apparent that the defendants were not misled by the variance, to their prejudice. (*Code,* § 169.) The allegations were not unproved "in their entire scope and meaning." (§ 171.)

If the views expressed are correct, the judgment appealed from as against the appellants is not erroneous.

Judgment affirmed.

[MONROE GENERAL TERM, March 7, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]