GEORGE GOLDBERG, Plaintiff, *v.* HARRY ALBERT and BENJAMIN SIGLIN, Copartners, Doing Business under the Firm Name and Style of NEW AMSTERDAM DELICATESSEN, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, December 1, 1936.

*Samuel Plumer,* for the plaintiff.

*Hyman Grill,* for the defendant Siglin.

LEWIS (DAVID C.), J. The following promissory note was executed, and upon it this plaintiff, the payee, now sues:

" 200 00/xx                                                    *June* 13 1936

" September 1, 1936 after date we promise to pay to the order of George Goldberg Two Hundred Dollars and No 00/100   *   *   * Dollars at National City Bank 86th St. Branch

" Value received.            NEW AMSTERDAM DELICATESSEN

HARRY ALBERT

" No. Due Sept. 1, 1936            B. SIGLIN "

The defendant Albert defaulted. The defendant Siglin pleads that he signed the note for the accommodation of his codefendant, that the plaintiff accepted the same with full knowledge; that the plaintiff failed to present the note and to serve the defendant with notice of dishonor, and for the reasons stated he demands a dismissal of the complaint. The plaintiff moves for judgment on the pleadings.

Assuming the truth of the facts pleaded by this defendant, what, if any, is their legal significance? The defendant signed the note with the very object of pledging his credit, and to have the plaintiff act upon such credit. Knowledge of the facts could not change the legal nature of the defendant's liability from that of an absolute and primary obligation within the Negotiable Instruments Law into a conditional and secondary liability within that act. The most that could be contended would be that it put this defendant virtually in the position of a surety. But there is no provision in

the Negotiable Instruments Law applying to a surety or requiring presentment and notice of dishonor as a condition precedent to the liability of a surety.

" The contract of the Surety is more burdensome to the promisor than the contract of the Guarantor, the form of the latter's contract in some cases giving him the benefit of notice and the right to require the creditor to exercise diligence in pursuing the principal; *advantages which the surety never has.*" (Stearns on Suretyship [4th ed.], p. 6.) In fact, the Negotiable Instruments Law does not mention the term " surety." It is only after we leave the province of the Negotiable Instruments Law that we take up the consideration of such a relationship. And when we do that, we enter the dominion of contract law. And once out of the jurisdiction of the Negotiable Instruments Law, we pass beyond its control.

One need only consider the nature of the defendant's liability in order to determine the sufficiency of his defense. If he was an indorser, his defense stands. If he was not an indorser, he has no defense.

The note is negotiable. The Negotiable Instruments Law defines the terms " maker " and " indorser " and their respective rights and liabilities. (Neg. Inst. Law, §§ 3, 55, 110, 130.)

However, the defendant claims that he is not a regular comaker but an accommodation comaker for the other defendant. I cannot see how such a distinction affects his liability to the payee. Ordinarily the note speaks conclusively on the question of the liability of a comaker to the payee. No other proof is requisite. However, if a party to the instrument claims an understanding different than that expressed by the note, the task of proof is his. By that I mean that the parties to a negotiable instrument may as between themselves agree that one has signed as an accommodation maker or as an accommodation payee or as an accommodation indorser, and not as a regular maker or indorser, and such an agreement may be established by parol testimony. However, an indorser is one thing; a comaker another. A maker is primarily liable; an indorser is not. The right to hold an indorser may be dependent upon presentment and notice of dishonor. The right to hold a maker is not.

" The action was brought by the payee of a note against the makers, which note had never passed out of the payee's hands; at least, there is no allegation in the complaint to that effect. It was therefore not necessary to show presentment and protest, and protest fees were not recoverable. 8 Corpus Juris 1103; *Hills* v. *Place,* 48 N. Y. 520; *Bush* v. *Gilmore,* 45 App. Div. 89." (*Wells* v. *Chaffee,* 207 App. Div. 467, argued before HUBBS, P. J., and CLARK,

DAVIS, SEARS and CROUCH, JJ. See, also, *Baldwin's Bank* v. *Smith*, 215 N. Y. 76, at p. 79.)

Accordingly, it is permitted to show that one is a comaker in fact though an indorser in form, for this permits the substitution of a primary obligation for a secondary liability; it does not impair the rights nor the remedy of the payee. But to change the liability from that of a maker to that of an indorser would affect the rights and remedy of the payee.

The relationship of a comaker to the payee is the same whether the comaker is the actual borrower or accommodation comaker for the borrowing maker.

" In fact they were all makers, and those who were in form indorsers had no right to expect or require that Sullivan would pay the note. Under *such* circumstances, presentment for *payment was not* necessary." (*Union Bank* v. *Sullivan*, 214 N. Y. 332.)

" Therefore, irrespective of whether the doctrine of *Pain* v. *Packard* (13 Johns. 174) is still recognized as part of our common law, under our present Negotiable Instruments Law [section 3] an accommodation maker is liable primarily to the payee or his assignee, and not merely liable as a surety." (*Stricks* v. *Siegal*, 138 Misc. 266.)

Since the proof that the defendant signed as an accommodation for his comaker does not affect the payee, oral testimony of such fact does not offend the parol evidence rule.

" However this may be, and without invoking any equitable rule, a conclusive answer to the objection to this evidence in any court, in my opinion is, that it does not tend to alter or vary either the terms or legal effect of the written instrument. The contract was in all respects the same, whether the defendant was principal or surety. In *either* case, it *was an absolute promise* to pay $1,000 one day after date, nothing more and nothing less. There is *neither condition nor contingency*." (*Hubbard* v. *Gurney*, 64 N. Y. 457, at p. 463. See, also, *Easterly* v. *Barber*, 66 id. 433, at p. 437.)

The defense pleaded only concerns the defendants. It is a matter of agreement, express or implied, between them.

The relationship of an accommodation comaker to the actual borrower is that of a surety. He has no right to sue the borrower until he has actually paid the note. And his right to sue arises out of an implied contract and not out of the note.

" This action is *ex-contractu* and has no support other than a contract to be by the law implied from the facts and conditions established herein. In case the law refuses to declare the contract, the action fails. The *note of the defendant* must be eliminated as the basis of a recovery." (*Blanchard* v. *Blanchard*, 201 N. Y. 134, at p. 137.)

Such an agreement is not a part of the promissory note.

"An undertaking that another man will perform his contract is not a promissory note. It is not within any definition which was ever given a promissory note, and it cannot be held to be such, without confounding all legal distinctions in relation to the nature of contracts." (*Brown* v. *Curtiss*, 2 N. Y. 225, 229.)

It seems that the defendant would construct a defense out of a caution, viz.: " The learned trial court and the Appellate Division were of the opinion that under sections 3 and 55 of the Negotiable Instruments Law (L. 1897, ch. 612), the facts set forth in the answer did not constitute a defense. The question whether these sections of the statute referred to have made a change in the liability assumed by an accommodation maker of a promissory note, is an interesting one which we do not deem it necessary to discuss at this time." (See *Nat. Citizens' Bank* v. *Toplitz*, 178 N. Y. 464, at p. 466.)

In this field of commercial law, certainty has always been a primary objective. Why read a doctrine of doubt into the statutory and substantive law? Has it not always been the avowed purpose of the law merchant and its codified successor, the Negotiable Instruments Law, to write certainty into the commercial law? Respect for that recognized purpose bids for recognition, especially where there is no binding precedent to the contrary. Under such circumstances, this court is unwilling to open the door to the unwelcome oral modification of the written story of a negotiable note.

There is another caution which well might be heeded in this instance.

" But on whatever ground the courts may have acted, it is a dangerous proceeding. At the very best, it violates the salutary rule, that all prior negotiations between the parties are to be deemed merged in the final written agreement; and allows that agreement to be overruled by the conversations which preceded it. If the parties have made a mistake in drawing up their contract, the instrument may be reformed in equity, by a direct proceeding for that purpose. But the courts can have no right, under color of construing the agreement, to say that it means something else from what the language of the instrument plainly imports. I have contended earnestly, though not always with success, for this doctrine." (*Brown* v. *Curtiss, supra,* at p. 227.)

The plaintiff's motion for judgment is, therefore, granted, with ten dollars costs.