CLAYTON A. WELCH et al., Doing Business as I. T. & C. A. WELCH & SONS, Plaintiffs, *v.* DUDLEY D. CAMPBELL, Defendant.

Supreme Court, Special Term, Madison County, February 3, 1950.

*Joe Schapiro* for plaintiffs.

*Robert J. Harbison* for defendant.

ZELLER, J. By motion, the plaintiffs seek an order striking out the two counterclaims contained in the answer and granting summary judgment. The plaintiffs' alleged cause of action is based upon the sale of cattle on two occasions to the defendant and one John Seymour, the execution by the defendant and Seymour of two conditional sales notes to secure the purchase price of the cattle, and the failure of the defendant to pay the balances due to the plaintiffs.

The defendant admits the execution of the two conditional sales notes by him and Seymour for $1,190 and $1,235, respectively and admits that only $1,350 has been paid on the notes. He admits his liability for the whole unpaid balance of one note but claims that his liability on the other is for one half of the balance due. In his first counterclaim he alleges that he is entitled to recover from the plaintiffs 10% of the purchase price of the cattle because of plaintiffs' failure to have printed on or inserted in the note the matter required by section 64-a of the Personal Property Law. In his second counterclaim the defendant alleges that the plaintiffs induced Seymour to breach a contract existing between Seymour and the defendant, thereby causing damages to the defendant.

The note dated August 17, 1946, as far as material here, reads as follows: " * * * I, the undersigned * * * promise to pay to the order of I. T. and C. A. Welch and Sons the sum of twelve hundred thirty-five no/100 dollars * * * with interest * * * Signed   D. D. CAMPBELL

JOHN SEYMOUR "

The defendant admits that the makers of this note are jointly and severally liable thereon and that his liability is for the face amount thereof plus interest. (Negotiable Instruments Law, § 36, subd. 7.)

The note dated July 31, 1946, as far as material here, reads as follows: " * * * We, the undersigned * * * promise to pay to the order of I. T. and C. A. Welch and Sons the sum of eleven hundred ninety dollars * * * with interest * * * Signed D. D. CAMPBELL
JOHN SEYMOUR "

The defendant contends that his liability to the payees is for only one half of the face amount of this note on the theory that the use of the words " We promise to pay " instead of " I promise to pay " reduced his liability to the extent mentioned. This contention cannot be sustained.

At common law a note signed by two makers and reading " We promise to pay " was regarded as creating a joint obligation upon the makers. (*Yorks* v. *Peck*, 14 Barb. 644.) The Negotiable Instruments Law has not changed the common law in this respect. (*First Nat. Bank of Marathon* v. *Knickerbocker*, 126 Misc. 467; *Lasky* v. *Lissik*, 140 Misc. 826; *Sisto* v. *Bambara*, 228 App. Div. 456; *Chippewa Credit Corp.* v. *Strozewski*, 259 App. Div. 187.)

Joint liability connotes that each and all of the parties are responsible for the entire obligation. (10 C. J. S., Bills and Notes, § 37, subd. d, par. [1]). The defendant makes no objection to the plaintiffs' failure to join Seymour as a party defendant. Such objection can be raised by a motion to correct a pleading. (Rules Civ. Prac., rule 102.)

The defendant signed the note with the object of pledging his credit, and to have the plaintiffs rely upon his credit. A comaker of a promissory note is liable to the payee for the full face amount of the note. (*Matter of McCabe*, 176 Misc. 286, 290; *Stricks* v. *Siegal*, 138 Misc. 266; *Goldberg* v. *Albert*, 161 Misc. 281; Negotiable Instruments Law, §§ 3, 55, 110.)

Having resolved this point of law there remains no triable issue concerning the defendant's liability for the unpaid balances of both notes.

The remaining questions concern the two counterclaims. Section 64-a of the Personal Property Law requires the printed portion of any conditional sales contract " for the sale for fifteen hundred dollars or less of goods for any use other than a commercial or business use " to be in at least eight-point type and to have printed thereon at the top thereof and also just above the place reserved for the signature of the buyer, in a size equal to at least ten-point bold type, the words " Conditional Sales Contract ". Other requirements are set forth therein, and

for failure to comply with such requirements the statute entitles the buyer to recover from the seller an amount equal to the credit service charge or 10% of the cash price if no credit charge is specified.

The conditional sales notes in this action are " for the sale for fifteen hundred dollars or less of goods ". They do not comply with the requirements of section 64-a. For instance, the words " Conditional Sales Contract " do not appear any place on the notes and other requirements have been omitted. However, the statute expressly exempts from its requirements the conditional sale of goods for " commercial or business use ".

The word " business ", in its ordinary and common use, is employed to designate human efforts which have for their goal a reward or profit. No recitation of authority nor statement of reasoning process is necessary to establish that farming is a business. The defendant owned a farm. On July 8, 1946, he contracted with Seymour to work it. The ten cows purchased from the plaintiffs were to be placed on this farm, milked, and the milk marketed. No conclusion is possible other than the purchase of these cows was for a " commercial or business use " and consequently these conditional sales notes were not subject to the requirements of section 64-a, and this counterclaim must be stricken out.

In the remaining counterclaim the defendant alleges a cause of action against the plaintiffs for wrongfully inducing a breach of a written contract for leasing and working the defendant's farm entered into by the defendant as landlord, and Seymour as tenant, on July 8, 1946.

The action for inducing a breach of contract was originally limited to contracts for personal services between master and servant. Later the doctrine was extended to include an action against another for wrongfully inducing a breach of contract for personal services, although the relationship of master and servant did not exist. And still later it was extended to include actions for unlawfully inducing the breach of any contract. (*Campbell* v. *Gates,* 236 N. Y. 457; *Hornstein* v. *Podwitz,* 254 N. Y. 443.)

The essential allegations to be pleaded to recover damages for wrongfully inducing a breach of contract are the existence of a legal contract, the alleged wrongdoer's knowledge of the existence thereof and his intentional procuring of the breach thereof without justification, and damages resulting therefrom. (*Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Hornstein* v. *Podwitz, supra.*)

The second counterclaim herein alleges the existence of a written lease between the defendant and Seymour; that the plaintiffs well knew that Seymour was a tenant working the farm pursuant to the lease; that the plaintiffs, with disregard for the rights of the defendant, induced Seymour to breach the contract of leasing; and that the defendant was damaged thereby to the extent of $500. Although these allegations do not contain the language customarily employed by the legal technician in framing such a cause of action, nevertheless, when fairly read, they do allege an unwarranted interference with the defendant's contract and so state a cause of action. Issues of fact are raised which require a trial of this counterclaim.

The second counterclaim alleging that plaintiffs unlawfully induced a breach of contract is severed to be disposed of by trial. The remainder of the answer including the first counterclaim is stricken out. Partial summary judgment for the relief sought by the complaint is granted upon condition that the entry of judgment be withheld until the trial of the second counterclaim. (Rules Civ. Prac., rule 114.)