[Civ. No. 19878. Second Dist., Div. Three. Mar. 29, 1954.]

RICHARD BLEND AUGUSTINE, Appellant, v.
ANGELO TRUCCO et al., Respondents.

Maurice Gordon for Appellant.

Fred W. Chase and Victor Bewley for Respondents.

SHINN, P. J.—Appeal by plaintiff from a judgment of dismissal entered on the sustaining of an objection by defendants to the introduction of any evidence. The cause went to trial on the third amended complaint and the answers thereto. The objection was sustained on the ground no count of the third amended complaint states facts sufficient to constitute a cause of action.

The third amended complaint contains four counts. In the first count, plaintiff seeks to recover a broker's commission from defendants Trucco for the sale of their real property consummated through defendants Allen and Dwyer. In the second count, plaintiff seeks damages against defendants Allen and Dwyer for allegedly inducing defendants Trucco to breach their contract with plaintiff. In the third count, a common count for labor and services is pleaded against defendants Trucco. In the fourth count, a common count for money had and received is pleaded against all the defendants.

The first count of the third amended complaint alleges:

1. Plaintiff is a licensed real estate broker doing business under the name of R. B. Augustine Company. On November 21, 1949, defendants Trucco, husband and wife, were the owners of a parcel of improved realty in Los Angeles. On that date, defendant Angelo Trucco gave plaintiff, in writing, the exclusive right to sell the property for $72,500. Defendant agreed to pay plaintiff a commission of 5 per cent of the sales price. The employment contract expired on December 1, 1949, 10 days later. In executing the contract defendant Angelo Trucco acted for himself and as agent for his wife.

2. (Paragraph V.) In July, 1950, defendants Trucco orally modified the agreement whereby the employment was continued as nonexclusive and the selling price was reduced to $65,000. On November 25, 1950, plaintiff procured a written offer from Mr. and Mrs. Angeloff to purchase the property for $65,000; the offer was accompanied with a deposit of $5,000. Plaintiff immediately presented the written offer to defendants Trucco. They stated that they would accept the offer upon obtaining a source in which to invest the proceeds from the sale. On several occasions between November 25, 1950, and February 5, 1952, plaintiff presented the offer to defendants Trucco and each time they stated they had not yet obtained a place to invest the money.

3. On February 5, 1952, defendants Trucco consummated a sale of the property to Mr. and Mrs. Angeloff for $65,000.

The second count reiterates the allegations of the first count and alleges:

1. In November, 1950, and for a long period of time prior thereto, defendant Allen was associated with plaintiff as a real estate broker. In December, 1950, he terminated his association with plaintiff and associated himself with defendant Dwyer, also a real estate broker. During Allen's association with plaintiff, he learned of plaintiff's employment by defendants Trucco to procure a buyer for their property and of the written offer for $65,000 obtained by plaintiff on November 25, 1950, from the Angeloffs. Defendant Dwyer acquired knowledge of the employment and the offer immediately after her association with Allen.

2. In the month of January, 1952, Allen and Dwyer procured a listing of the property from defendants Trucco in the name of Dwyer. Thereafter, Allen and Dwyer presented to defendants Trucco an offer from Mr. and Mrs. Angeloff to purchase the property for $65,000. The offer was accepted and the sale was consummated.

3. Plaintiff, by reason of the matters aforesaid, sustained damages in the sum of $3,250.

The prayer was for judgment against defendants jointly and severally in the sum of $3,250.

At the trial, defendants objected to the introduction of any evidence on behalf of plaintiff on the ground that the complaint did not state a cause of action against them. The objection was sustained. Plaintiff made an offer of proof and moved the court to allow the complaint to be amended by the addition of a fifth and a sixth count which were orally stated.

The proposed fifth count was limited to defendants Trucco. It was identical to the first count except that it included in lieu of paragraph V thereof the following, as stated by counsel: "That on or about the 2nd day of December, 1949 and on numerous occasions thereafter during the year 1950 the defendants Trucco urged and requested Plaintiff to continue his efforts to procure a buyer for said real property, and Plaintiff pursuant to said request did continue to exert his efforts in attempting to find a buyer for said real property. Sub-paragraph, that on or about the month of July, 1950, the defendants Trucco orally authorized Plaintiff to reduce the sale price of said real property from $72,500.00, to $65,000.00,

and that they would accept said new price upon the basis of one-half in cash and the remaining half to be represented by a first trust deed to be executed by the buyers. And as a sub-paragraph, still part of Paragraph 5, that pursuant thereto and on the 25th day of November, 1950, plaintiff procured one Dan L. Angeloff and his wife, Sadie Angeloff, to make a written offer of purchase of said real property at the price of $65,000.00, said offer being accompanied with a deposit of $5,000.00 as an evidence of good faith. Sub-paragraph, that Plaintiff immediately presented said written offer of purchase and the said $5,000.00 deposit to defendants Trucco; that said defendants stated that they would accept the offer upon procuring a source in which to invest the proceeds from the sale of their property. Sub-paragraph, that thereafter on several occasions, between November 25, 1950 and February 5, 1952, plaintiff again presented said offer of purchase to defendants Trucco, and on each occasion said defendants stated that they had not yet obtained a place to invest the proposed sale proceeds.'' The proposed sixth count was merely a reiteration of the proposed fifth count, but was stated to relate only to defendants Allen and Dwyer.

Defendants objected to the proposed amendments on the grounds that the proposal came too late and that neither the proposed fifth nor sixth count stated a cause of action as against any defendant. The motion was denied. The trial judge expressly stated he did not deny the motion on the ground it came too late, but on the ground that neither the proposed fifth nor sixth count stated facts sufficient to constitute a cause of action.

Plaintiff contends the court erred in sustaining the objections to the reception of any evidence and in denying his motion for leave to amend. He argues that: 1. In July, 1950, there was a valid oral modification extending the time limitation set forth in the written agreement and reducing the sales price of the property, which oral modification became effective upon his executing his part of the oral agreement, bringing the agreement as modified within the purview of section 1698 of the Civil Code.[1] 2. He should have been permitted to introduce evidence to show that after December 1, 1949, and during 1950, defendants Trucco waived the

---

[1]Section 1698 reads: ''A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.''

written time limitation in which to procure a purchaser by urging and requesting him to continue his efforts. 3. Defendants Trucco are estopped to assert and rely upon the statute of frauds, having received the fruits of his labors. 4. Defendants Allen and Dwyer are liable in damages for inducing defendants Trucco to breach their contract.

■ "An objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion by a defendant for judgment on the pleadings. . . .

■ An objection by a defendant to the introduction of any evidence may only be sustained where the complaint fails to state a cause of action, and that is the sole question presented to the court. . . . ■ Nothing dehors the complaint may be considered. No defense set up in the answer may be considered. The truth of the allegations of the complaint must be assumed. If the complaint states a cause of action, the objection must be overruled." (*Miller* v. *McLaglen*, 82 Cal.App.2d 219, 223 [186 P.2d 48].)

■ "On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must be regarded as true. The court must, in every stage of an action, disregard any defect in the pleadings which does not affect the substantial rights of the parties. (Code Civ. Proc., § 475.)

■ 'Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears.' (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 42 [172 P.2d 867].) ■ All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. (*Tristam* v. *Marques*, 117 Cal.App. 393, 397 [3 P.2d 947].)

■ 'In determining whether or not the complaint is sufficient as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' (*Matteson* v. *Wagoner*, 147 Cal. 739, 742 [82 P. 436].) ■ In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a

view to substantial justice between the parties. (*Buxbom* v. *Smith*, 23 Cal.2d 535, 542 [145 P.2d 305] ; *Gerritt* v. *Fullerton U. H. School Dist.*, 24 Cal.App.2d 482, 486 [75 P.2d 627].) 'While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms.' (*Buxbom* v. *Smith*, 23 Cal.2d 535, 542 [145 P.2d 305].)" (*Hardy* v. *San Fernando Valley C. of C.*, 99 Cal.App.2d 572, 577-578 [222 P.2d 314].)

### The Case Against Defendants Trucco

 To entitle a broker to recover a commission, he must show that he performed the services required of him in accordance with the terms of his employment contract and within the time limited in the contract, or within such extension of time as may have been granted by his principal. If he fails to do so, he is not entitled to the commission even though he made efforts to sell and first caused the property to be called to the attention of the person who subsequently made the purchase. (*Baker* v. *Curtis*, 105 Cal.App.2d 663, 667 [234 P.2d 153] ; *Ford* v. *Palisades Corp.*, 101 Cal.App.2d 491, 498 [225 P.2d 545] ; *Lisle* v. *E. B. & A. L. Stone Co.*, 103 Cal.App. 409 [284 P. 680].)

 The first count does not state facts sufficient to constitute a cause of action against defendants Trucco. After December 1, 1949, plaintiff's services were not rendered pursuant to any contract or memorandum in writing authorizing him to sell the property. He was acting as a mere volunteer. During the 10 days that plaintiff's contract was in effect, he did not find a purchaser ready, willing, and able to buy according to the terms of the contract. When the contract expired on December 1, 1949, the relations between plaintiff and defendants Trucco were as though the contract had never been executed. Such being the case there was no contract in existence, and the complaint pleaded only an oral contract of employment for an indefinite time, and upon different terms, although it was called a modification. The oral contract was, therefore, an original agreement governed by the provisions of section 1624 of the Civil Code which requires a contract employing a broker to sell real estate for a commission to be in writing. (*Fogg* v. *McAdam*, 25 Cal.App. 522 [144 P. 296].) Unless a broker's employment is evidenced by a writing, he cannot recover either under an

oral contract or in *quantum meruit.* (*Ford* v. *Palisades Corp.,* *supra,* 101 Cal.App.2d 491; *Jamison* v. *Hyde,* 141 Cal. 109 [74 P. 695]; *McPhail* v. *Buell,* 87 Cal. 115 [25 P. 266]; *White* v. *Hirschman,* 54 Cal.App.2d 573 [129 P.2d 430].)

■ The procurement of a purchaser is not such performance as will entitle a broker to recover a commission in the absence of a compliance with the requirements of section 1624. (*Herzog* v. *Blatt,* 80 Cal.App.2d 340, 343 [180 P.2d 30].)

■ An estoppel to assert the statute of frauds cannot be predicated on the principal's refusal to comply with an oral promise to pay a commission made after the time limit fixed by the contract has expired. (*Herzog* v. *Blatt, supra,* 80 Cal.App.2d 340.) The oral contract of July, 1950, was void. (*Fogg* v. *McAdam, supra,* 25 Cal.App. 522.)

Since, under the allegations of the first count, plaintiff did not procure a buyer within the time limit fixed in his contract, that count does not state facts sufficient to constitute a cause of action.

We next consider the motion to amend by adding a fifth count as against defendants Trucco. As we have said, this motion was denied solely on the ground that the proposed fifth count does not state facts sufficient to constitute a cause of action. Had the motion been denied on the ground the proposal came too late, a different question would be presented. The proposed fifth count alleges in substance that on November 21, 1949, defendants Trucco, in writing, employed plaintiff to sell the property and agreed to pay him a commission; the time limit specified in the contract expired on December 1, 1949; on December 2, 1949, and on numerous occasions during 1950, defendants Trucco urged and requested plaintiff to continue his efforts to procure a buyer for the property; pursuant to the requests, plaintiff did continue to exert such efforts; on November 25, 1950, plaintiff procured a buyer, the Angeloffs, who were ready, willing, and able to buy the property on the terms proposed by defendants Trucco; defendants Trucco refused to accept the offer; plaintiff presented the offer to them on several occasions between November 25, 1950, and February 5, 1952; on each occasion they refused to accept the offer; on February 5, 1952, defendants Trucco sold the property to the Angeloffs, through defendants Allen and Dwyer, on the terms contained in the offer presented by plaintiff on November 25, 1950.

■ The rule that to entitle a broker to recover a commission he must show that he procured a buyer ready, willing,

and able to buy within the time limited in his contract is subject to the exception that the principal may waive the time limit. (9 Cal.Jur.2d 258, § 89.) The rule of extension of a broker's contract is dependent on a waiver. (*Love* v. *Gulyas,* 87 Cal.App.2d 608, 615 [197 P.2d 405].)

*Baker* v. *Curtis,* 105 Cal.App.2d 663 [234 P.2d 153], is cited by plaintiff as a case precisely in point. The case is authority for the proposition that the time element may be waived and for the further proposition that if, while his employment agreement is in force, a broker produces a buyer with whom the owner negotiates a sale he has earned his commission. In that case Baker produced the buyer and Curtis, ignoring his broker, sold to the prospect directly. This is not such a case. The difference between the two cases is that in the Baker case the sale was made to Baker's customer while Baker's commission contract was in force. Baker was properly held to have been the inducing cause of the sale. No facts were alleged in the present complaint to show that Augustine's authorization was in force after November, 1950, when the $65,000 offer by Angeloff was refused. It may be granted that the time limitation had been waived by the Truccos up to that time by their requests that plaintiff continue his efforts to find a buyer, but it was not alleged that the Truccos thereafter either requested or authorized him to do anything further. Neither was it alleged that he did anything further except to resubmit the same offer, which was consistently refused. Waiver of the time granted plaintiff to find a buyer might last as long as the Truccos were encouraging him to render his services and he was diligently complying with their requests, but it could not last longer than that, or forever, as plaintiff apparently contends. Some 14 months elapsed after the offer was rejected before it was made again through other brokers. It appears that the Truccos were through with plaintiff as early as November, 1950. Angeloff also considered himself through with plaintiff before he submitted his offer through Allen and Dwyer. It could not be denied that these brokers were the inducing cause of the sale and that they earned a commission. They succeeded where plaintiff had failed, and unlike the actions of Curtis in the Baker case in selling directly to Baker's customer, the Truccos did not contact Angeloff nor endeavor in any manner to take advantage of the offer which plaintiff presented. It must be presumed, in the absence of allegation

to the contrary, that the Truccos acted in good faith in declining the first offer and that they had no intention of selling to Angeloff for $65,000 until they had received and considered his second offer. Many things could have happened in 14 months to cause them to change their minds, such as changes in their circumstances or in market conditions. For these reasons the eventual sale to Angeloff furnished no basis whatever for plaintiff's claim to a commission.

If plaintiff earned a commission it was by reason of the offer submitted in November, 1950. In two respects he failed to comply with the terms of the written agreement. He did not produce a buyer within 10 days nor a buyer at $72,500. There was a waiver as to the time element. As to the price it was alleged that a price of $65,000 was agreed upon orally.

Plaintiff relies upon the oral contract, claiming that it was valid as a modification of the written contract because he performed all that was required of him. He relies upon *D. L. Godbey & Sons Const. Co.* v. *Deane,* 39 Cal.2d 429 [246 P.2d 946], for the proposition that if an oral modification of a written contract is supported by a consideration it becomes an executed oral agreement within the meaning of section 1686 of the Civil Code if one party performs whatever is required of him, although the other party fails or refuses to perform. The court in that case emphasized the consideration that was alleged, holding it to be sufficient to support the oral modification. In order to bring his complaint within the rule of the cited case it was necessary for plaintiff to plead facts constituting a consideration to the Truccos for the alleged oral modification. If reliance is placed upon facts which would give validity to an otherwise invalid contract they must be pleaded. We turn to the complaint here to see what was alleged. We find no allegation of a consideration by the pleading of facts, or otherwise. The Truccos merely named a lower price for their property. Augustine agreed to nothing although he continued to look for a buyer until he found Angeloff, but it was not alleged that he would not have done so had the price not been reduced. He did not increase his efforts, did not spend any money, nor suffer any disadvantage. He merely had a better opportunity at no cost to himself. The Truccos received no benefit from the reduction in price nor through any promise of plaintiff to put forth any additional effort. He made no such promise. It therefore appears from the terms of the alleged oral modification that it was without consideration moving to the Truccos

and created no duty on their part to accept the offer of $65,000. Plaintiff failed to produce a buyer at the price stipulated in his contract of employment and did not earn a commission.

It is suggested that defendants are estopped to rely on the statute of frauds by claiming invalidity of the oral agreement to accept a lower price for the property. The facts we have related do not contain the elements of estoppel. The general rule as to estoppel to rely upon the statute of frauds is stated in 12 California Jurisprudence, page 934 et seq.[2] It was not alleged that plaintiff rendered any service to the Truccos that would not have been rendered had the price not been reduced, or that he suffered detriment of any sort through reliance upon the alleged oral agreement. Neither did the Truccos benefit in any manner which would unjustly enrich them or be of any benefit to them. Their refusal to comply with the alleged modification would no more work a fraud upon plaintiff than would reliance upon the statute of frauds in any other case of a broker endeavoring to enforce an invalid agreement. Estoppel by conduct is not based upon trivialities. The facts justifying application of the doctrine must be pleaded, and they must have strong appeal to the court's sense of justice. Every real estate broker knows that his commission contract must be in writing. If he operates without one he assumes the risk and has no cause for complaint if his efforts are unrewarded.

In calling attention to the absence of any allegation that plaintiff made no promise to put forth effort to find a buyer at the reduced price, or that he put forth any additional effort, expended any money or suffered any detriment, we do not imply that the complaint would have been good had

[2] 'Equity is bound by the statute of frauds, and, in general, will give relief against it only in two classes of cases; first, where to allow the statute to be set up would be to secure to the party relying upon it the fruits of actual fraud; and, second, where to allow the statute to be set up would place the party resisting it in an inequitable position, it appearing further that there is evidence just as good as a writing of the agreement between the parties. To create an estoppel to assert the statute, the party relying on it must be able to show clearly, not only the terms of the contract, but also such acts and conduct of the opposite party as amount to a representation that he will not avail himself of the statute to escape his agreement, and, further, that the party asserting the estoppel has, in reliance on such representation and in pursuance of the contract, so far altered his position as to incur an unjust and unconscionable injury and loss, if the statute be allowed to be set up. If no such loss or injury is shown the reason for the estoppel fails.''

such allegations been made. ■■■ The fact that a broker, acting under an oral contract of employment, renders services to an owner in an effort to find a buyer furnishes no basis for an estoppel of the owner to rely upon the statute of frauds. It was said in *Hicks* v. *Post*, 154 Cal. 22, 28′ [96 P. 878]: "The fact that, acting under an invalid agreement, he made efforts to find purchasers, cannot, of course, operate to prevent the other party from asserting the invalidity of the contract. To hold the contrary would be to abrogate the statute of frauds. (*Shanklin* v. *Hall*, 100 Cal. 26 [34 P. 636]; *Dolan* v. *O'Toole*, 129 Cal. 488 [62 P. 92].)"

In *Kroger* v. *Baur*, 46 Cal.App.2d 801, 803-804 [117 P.2d 50], a broker endeavored to recover a commission upon the theory that he had been defrauded by the oral promise of the owner made without intention to perform it. He alleged the making of the promise, the rendering of services upon his part, and he contended that the owner should be held estopped to assert that the oral agreement was invalid. In holding that the complaint failed to state a cause of action the court said: "Assuming, as we must, that the allegations of the complaint are true, nevertheless the hardship thus falling upon the plaintiff must be borne by him, as this situation is precisely that which the statute of frauds was designed to prevent. Without the protection of the statute, the defendant is called upon to meet the bald assertion of a promise to which he can interpose nothing but his simple denial. The various authorities cited by appellant do not support his position. They involve situations where, for equitable considerations wholly absent from the case at bar, it was held that a party had waived the statute or was estopped to set it up. In *Albany Peanut Co.* v. *Euclid Candy Co.*, 30 Cal.App.2d 35 [85 P.2d 471], the elements of such estoppel are set forth. It is there said, at page 38:

" 'Before such an estoppel can arise the essential terms of the contract must be shown with reasonable certainty, and that representations were made by the opposite party that the invalidity of the contract under the statute would not be asserted, together with the fact that the party urging the estoppel has, pursuant to the terms of the contract, and induced by the representations and in reliance thereupon, changed his position to his detriment, the intention to make such change being known at the time to the one making the representations. The circumstances must clearly indicate that it would be a fraud for the party offering the inducements to

assert the invalidity of the contract under the statute, and unless the words and conduct of the party sought to be held amount to an inducement to the other to waive a written contract in reliance upon the representation that the person promising will not avail himself of the statute of frauds there is an absence of fraud which is requisite to an estoppel.'

"Neither the complaint nor the offer of proof made by counsel for plaintiff at the trial present any facts warranting a conclusion that the plaintiff was fraudulently induced to alter his position or to suffer an unjust and unconscionable injury and loss. As pointed out by the trial judge, the situation between a licensed real estate broker and his alleged client is altogether different from that between persons who are unfamiliar with the statute of frauds or the law relating to such contracts. A real estate broker must be deemed to know that the agreement for his commission must be in writing."

In *Sweeley* v. *Gordon,* 47 Cal.App.2d 381, 383-384 [118 P.2d 14], the court said: "It is conceded that Gordon did not sign any authorization employing plaintiff to sell the property but it is argued by plaintiff that since Gordon knew of plaintiff's activities, orally promised him to pay the commission and accepted the fruits of his labor, he is now estopped from taking advantage of the statute of frauds. . . .

"The only claim now made by plaintiff is that the judgment should be reversed under the doctrine of estoppel. A plea of this kind is directed to the equity power of the court. Plaintiff is a real estate broker and as such is presumed to know that contracts made by brokers for commissions for the sale of real estate are declared to be invalid by the code and are unenforceable in the courts unless they are put in writing and subscribed by the owners of the property. He nevertheless failed to secure proper written authorization but relied upon the oral promise of defendant. The equitable powers of the court may not be invoked by one in his position. Subdivision 5 of section 1624 was placed in the Civil Code for the protection of owners of real estate and also for the protection of real estate brokers. As pointed out in *Hicks* v. *Post, supra,* a ruling that plaintiff could recover under the allegations of his complaint would be tantamount to an abrogation of the section of the statute of frauds applicable to sales of real estate by brokers."

Although we have already devoted more attention to the claim of estoppel than it deserves, further support for our

views will be found in *Colburn* v. *Sessin*, 94 Cal.App.2d 4 [209 P.2d 989], *White* v. *Hirschman, supra*, 54 Cal.App.2d 573 and in *Young* v. *Bank of California*, 88 Cal.App.2d 184 [198 P.2d 543], and the cases cited on pages 186 and 187.

It must be presumed that plaintiff stated all the facts which were favorable to his claim and that he would be able to prove no more than he alleged. ▇▇▇ Nothing may be supplied by inference, for as stated in *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 297 [253 P. 137], "The estoppel must be so established as to leave nothing to surmise or questionable inference." The facts alleged were clearly insufficient to estop the Truccos from denying the validity of the alleged oral agreement.

We are well satisfied to come to these conclusions. Anyone with even a casual acquaintance with the field of real estate operations will realize the disastrous consequences that would follow the abandonment of the legal principles here involved, which have been understood and observed in this field from the beginning of the state's history. No more backward step could be taken by the courts than to countenance an action for a broker's commission founded on an alleged statement of an owner, perhaps over the telephone, that he would accept less for his property than the price stipulated in the broker's written contract of employment. The security which the writing affords the parties would be taken from the very heart of the agreement, and there would be no protection against fraud and perjury.

It is unnecessary to consider the further contention of defendants that there cannot be a valid oral modification of a contract that is required to be in writing without full performance of the modified agreement by both parties.

### The Case Against Defendants Allen and Dwyer

▇▇▇ One who, without a privilege to do so, induces a third person not to perform a contract with another is liable to the other for the harm caused thereby. (Restat. Torts, § 766; anno: 26 A.L.R.2d 1227.) In California, an action will lie for unjustifiably inducing a breach of contract. (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 39 [112 P.2d 631].)

▇▇▇ The principles governing an action for unjustifiably inducing a breach of contract are stated in *Imperial Ice Co.* v. *Rossier, supra*, (p. 36) : "A person is likewise free to carry on his business, including reduction of prices, advertising, and solicitation in the usual lawful manner although some

third party may be induced thereby to breach his contract with a competitor in favor of dealing with the advertiser. [Citations.] ■ Again, if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract. [Citations.] ■ A party may not, however, under the guise of competition actively and affirmatively induce the breach of a competitor's contract in order to secure an economic advantage over that competitor. ■ The act of inducing the breach must be an intentional one. If the actor had no knowledge of the existence of the contract or his actions were not intended to induce a breach, he cannot be held liable though an actual breach results from his lawful and proper acts. . . .

"The complaint in the present case alleges that defendants *actively induced* Coker to violate his contract with plaintiffs so that they might sell ice to him. The contract gave to plaintiff the right to sell ice in the stated territory free from the competition of Coker. The defendants, by virtue of their interest in the sale of ice in that territory, were in effect competing with plaintiff. By inducing Coker to violate his contract, as alleged in the complaint, they sought to further their own economic advantage at plaintiff's expense. Such conduct is not justified. *Had defendants merely sold ice to Coker without actively inducing him to violate his contract, his distribution of the ice in the forbidden territory in violation of his contract would not then have rendered defendants liable. They may carry on their business of selling ice as usual without incurring liability for breaches of contract by their customers. It is necessary to prove that they intentionally and actively induced the breach.*" (Italics added.) (See also *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 39-40 [172 P.2d 867]; *Remillard-Dandini Co.* v. *Dandini,* 46 Cal.App.2d 678, 680 [116 P.2d 641]; *H. G. Fenton Mat. Co.* v. *Challet,* 49 Cal.App.2d 410, 415-417 [121 P.2d 788]; *Blender* v. *Superior Court,* 55 Cal.App.2d 24, 26 [130 P.2d 179]; *Elsbach* v. *Mulligan,* 58 Cal.App.2d 354, 366 [136 P.2d 651]; *Baker* v. *Kale,* 83 Cal.App.2d 89, 92 [189 P.2d 57]; *Roberts* v. *Wachter,* 104 Cal.App.2d 281, 287, 289-290 [231 P.2d 540].)

■ There is no liability for inducing a breach of contract where the breach is caused by the exercise of an ab-

solute right—that is, an act which a person has a definite legal right to do without any qualification. (*Sweeley* v. *Gordon*, 47 Cal.App.2d 385 [118 P.2d 16, 842]; *Caldwell* v. *Gen. Packing Co.*, 52 Cal.App.2d 80 [125 P.2d 901]; anno: 26 A.L.R.2d 1227, 1259.)

A plaintiff, seeking to hold one liable for unjustifiably inducing another to break a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof.

Unless the act complained of was the proximate cause of the injury, there is no liability. (*Hill* v. *Progress Co.*, 79 Cal.App.2d 771, 780 [180 P.2d 956]; 30 Am.Jur. 82, § 32. See *Krigbaum* v. *Sbarbaro*, 23 Cal.App. 427 [138 P. 364], an action by a real estate broker for unjustifiably inducing a breach of his contract with the principal, in which the complaint alleged that the defendant "intimidated and coerced" the principal to breach the contract.) In *Welch* v. *Campbell*, 197 Misc. 165 [94 N.Y.S.2d 860] affd. 278 App.Div. 605 [102 N.Y.S.2d 51], citing *Hornstein* v. *Podwitz*, 254 N.Y. 443 [173 N.E. 674, 84 A.L.R. 1], it is said that the essential allegations to be pleaded in order to recover damages for wrongfully inducing a breach of contract are the existence of a legal contract, the alleged wrongdoer's knowledge of the existence thereof, his intentional inducing of a breach thereof without justification, and damages resulting therefrom. In *Sweeney* v. *Gleason*, 31 Pa.D.& C. 577, it was held that a complaint in an action against a third person for having induced the plaintiff's discharge, which merely alleged that the defendant unlawfully, wantonly, maliciously, and without justifiable cause, advised, requested, and persuaded the employer to discharge plaintiff and then set forth the damages alleged to have been sustained by such action, without alleging any unlawful means resorted to by the defendant or intentional or wilful acts committed by him, was insufficient, requiring judgment for the defendant. (See 30 Am.Jur. 97, § 52.)

We have already seen that after November, 1950, plaintiff had no contract with the Truccos, but in addition to that fatal fact, there is no allegation in the complaint or in the proposed sixth count that Allen or Dwyer intentionally or actively induced or persuaded the Truccos to breach any contract with plaintiff. There is no allegation that the Truccos would otherwise have performed any contract with plaintiff, or that it was breached or abandoned by any wrong-

ful act of Allen or Dwyer, or that any act of Allen or Dwyer was the moving cause of the Truccos' breaching the contract. Plaintiff alleges that after July, 1950, his contract was non-exclusive. It was not until about a year and two months after it is alleged Allen learned that plaintiff had procured the Angeloffs as buyers that the Truccos sold through Allen and Dwyer. The proposed sixth count added nothing to the third amended complaint as against Allen and Dwyer and it stated no cause of action against them.

For the reasons stated, the complaint as amended failed to state a cause of action against any of the defendants and their motion to exclude evidence was properly granted.

The judgment is affirmed.

Wood (Parker), J., concurred.

VALLÉE, J.—I agree that neither the third amended complaint nor the proposed sixth count states facts sufficient to constitute a cause of action. I am of the opinion that the proposed fifth count states a cause of action against the Truccos. They employed plaintiff in writing. They waived the time limitation and the price fixed in the writing. Within the extended time and while the contract was in force, it never having been abandoned by plaintiff nor rescinded by the Truccos, plaintiff, on November 25, 1950, produced a buyer who was ready, willing, and able to buy on the terms and for the price specified by the Truccos. Under such facts plaintiff is entitled to a commission. In the absence of a specific agreement to the contrary, a broker employed to sell property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to buy on the vendor's terms. (See *Twogood* v. *Monnette,* 191 Cal. 103, 107 [215 P. 542] ; *Moore* v. *Borgfeldt,* 96 Cal.App. 306 [273 P. 1114].) I would reverse the judgment as to defendants Trucco with directions to permit plaintiff to amend the third amended complaint by adding thereto the proposed fifth count.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1954.