[Civ. No. 26493.   Second Dist., Div. One.   Jan. 28, 1963.]

AMERICAN CASUALTY COMPANY, Cross-complainant and Appellant, v. CURRAN PRODUCTIONS, INC., Cross-defendant and Respondent.

Anderson, McPharlin & Conners and Robert E. Jones for Cross-complainant and Appellant.

Irmas & Rutter and William A. Rutter for Cross-defendant and Respondent.

FOURT, J.—This is an appeal from a judgment entered after a motion for summary judgment was granted in favor of respondent, decreeing that appellant take nothing by its cross-complaint.

The chronology of events is as follows:

On October 10, 1961, cross-complainant (hereinafter sometimes referred to as appellant) filed its cross-complaint for breach of contract and upon written indemnity agreement. Therein two causes of action are asserted. The first cause of action is directed against cross-defendants other than respondent. The second cause of action is directed specifically against this moving cross-defendant (hereinafter sometimes referred to as respondent).

The substance of the allegations of the second cause of action is that prior to August 2, 1960, Hanks & Higgins Specialties, Inc. (hereinafter referred to as Hanks) had entered into a written contract with C.H. Leavell and Company (hereinafter referred to as Leavell) by which Hanks agreed to furnish and install a certain track, curtain and auditorium chairs at an army proving ground in Arizona. Appellant, as surety, issued a contract bond on behalf of Hanks, guaranteeing the performance of the Hanks-Leavell contract. Also, prior to August 2, 1960, Hanks entered into a written contract with Twaits-Wittenberg Company and Morrison-Knudsen Company, Inc., a joint venture (hereinafter referred to as Twaits), whereby Hanks "agreed to provide all necessary labor and material necessary to complete the installation of all opera chairs, back paneling, aisle ends, and ashtrays in certain rooms in the new Hall of Records Building in the City of Los Angeles." Appellant, as surety, issued a contract bond on behalf of Hanks, whereby appellant became surety for the performance of the Hanks-Twaits contract.

Prior to August 2, 1960, Hanks defaulted on each of the two contracts mentioned above and demand was made by Leavell and Twaits that appellant complete or arrange for the completion of these two contracts under the terms of appellant's two contract bonds.

Appellant further alleges in paragraph VII of the second cause of action that on or about August 2, 1960, appellant and respondent entered into an oral agreement whereby

respondent agreed to perform the Hanks-Leavell contract for the agreed sum of $30,493 and further agreed to perform the Hanks-Twaits contract for the agreed price of $14,697; that with regard to the Hanks-Leavell contract, appellant and respondent executed a written agreement and respondent fully performed the work and was paid the agreed sum of $30,493. ''That with regard to the contract between HANKS . . . and TWAITS . . . [respondent] did agree with . . . [appellant] to enter into a written contract with TWAITS . . . to perform the work agreed to be performed by HANKS . . . for the sum of $14,697, under the identical terms, provisions and conditions as the contract by and between said contractor and HANKS . . .''

Appellant further alleges (paragraph IX) that on or about June 5, 1961, Twaits notified appellant that respondent had refused to execute a contract on terms identical to the Hanks-Twaits contract and that respondent had advised Twaits respondent would not enter into or execute such a contract; that on or about June 6, 1961, appellant notified respondent in writing of the information received from Twaits and did advise respondent that appellant would look to respondent for any damages sustained by appellant by reason of respondent's failure to enter into a contract with Twaits. It is then alleged (paragraph X) that Twaits filed the within action against appellant to recover the sum of $13,073 under and pursuant to the provisions of appellant's contract bond, that ''in the event that the court should adjudge and decree that . . . [appellant] is liable to . . . [Twaits] in any sum or sums whatsoever, then in that event . . . [appellant] shall be damaged in such sum or sums by reason of the breach of . . . [respondent's] oral agreement'' and ''shall be entitled to judgment over against . . . [respondent] for any such sum or sums awarded to . . . [Twaits].''

On December 27, 1961, respondent filed a notice of motion for summary judgment. The motion was based upon ''the affidavit of Harry M. Hanks . . . the deposition of William J. Conners . . . and the complete file and record of this case.''[1] It is respondent's position that the contract sued upon violated the statute of frauds.

Appellant filed its points and authorities and declaration in opposition to respondent's motion for summary judgment

[1]Respondent did not file an answer to the cross-complaint.

on January 9, 1962. On the same day respondent filed supplemental points and authorities.

A minute order dated January 30, 1962, and entered February 1, 1962, discloses that respondent's motion was granted. Judgment was entered February 8, 1962, and this appeal follows.

The rules relating to summary judgment are set forth in *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App. 2d 342, 349 [13 Cal.Rptr. 423] as follows:

"[2] The function of the trial court in considering a motion for summary judgment is to determine whether there exists a triable issue of fact. [Citations.] [3] Whether a triable issue of fact exists is determined by the sufficiency of the affidavits of the parties. [Citations.] [4] Where the affidavits do not present any triable issue of fact, then the problem is resolved into a qusetion of law and the trial court determines the issues of law. [Citations.]

"[5] As stated in *Eagle Oil & Refining Co.* v. *Prentice*, 19 Cal.2d 553 at page 556 [122 P.2d 264]:

"'Because the procedure is summary and presented on affidavits without the benefit of cross-examination, a trial by jury and opportunity to observe the demeanor of witnesses in giving their testimony, the affidavits filed on behalf of the [plaintiff] should be liberally construed to the end that he will not be summarily deprived of the full hearing available at a trial of the action and the rights incident thereto.

"[6] 'The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact. [Citation.]

"[7] 'For these reasons it may further be said that the affidavits of the moving party, the [defendant] in this case, should be strictly construed and those of his opponent liberally construed. [Citations.] [8] And in this connection it may be further observed that the better rule is that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts. [Citation.]'

"[9] It is, of course, fundamental that the granting of a summary judgment where a triable issue of fact or defense is shown constitutes reversible error. [Citations.]"

The first question to be resolved is whether the agreement

to furnish and install opera chairs, etc. is an agreement for the sale of goods (within the purview of the statute of frauds) or an agreement for the supplying of labor and materials.

The alleged oral agreement between appellant and respondent was that respondent was to enter into an agreement with Twaits on the same terms, provisions and conditions as the Hanks-Twaits contract.

The Hanks-Twaits contract obligated Hanks to provide and install in place opera chairs of certain specifications and dimensions which were to be obtained complete from a seating manufacturer for the specific price of $14,697. In the declaration of Harry M. Hanks in support of motion for summary judgment it is declared:

"4. That in the course of said negotiations [i.e., between Hanks and Twaits], declarant specifically told . . . Twaits . . . that Hanks . . . did not manufacture the opera chairs which were the subject of the said contract, that no business entity West of the Rocky Mountains manufactured such opera chairs, and that Hanks . . . intended to purchase the chairs in question from Arlington Seating Co., in Arlington Heights, Illinois, in order to perform the said contract.

"5. At said time and at all times thereafter . . . Twaits . . . acknowledged and stated that Hanks . . . should, in performance of said contract, purchase and acquire said opera chairs from a manufacturer of the said chairs."

■ It is clear that the Hanks-Twaits contract was a contract for the sale of goods within the purview of the statute of frauds—Civil Code section 1724, subdivision (1) and not a contract for work and labor (i.e., within the manufacturing exception—Civ. Code, § 1724, subd. (2)) because among other reasons the opera chairs were not to be manufactured by Hanks for Twaits.

■ It is stated in 37 Corpus Juris Secundum, Frauds, Statute of, section 141, page 628 ". . . if the goods are not to be manufactured by the seller, but are to be procured by him from another, the agreement must be in writing to be enforceable."

The case of *Aced* v. *Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897] relied upon by appellant, is not inconsistent with the above stated rule. The *Aced* case is an example of an application of the manufacturing exception where the seller was the manufacturer.

The next issue is whether the oral agreement between appel-

lant and respondent to enter into a contract within the statute of frauds is itself within the statute of frauds.

What is stated in 49 American Jurisprudence, Statute of Frauds, section 6, pages 368-369 is apposite:

". . . [T]he general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. Neither promise is enforceable unless the statute is satisfied. In other words, a parol agreement invalid under the statute is not aided by a further parol agreement to reduce the principal agreement to writing. To allow the enforcement of such an agreement would be tantamount to taking the main contract out of the statute, and as has been said, it is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid. Such a construction would be a palpable evasion of the statute, and let in all the evils against which it is directed . . . The rule that an oral agreement to execute an agreement which is within the statute of frauds or to sign an agreement which that statute requires to be in writing is invalidated by that statute is applicable regardless of the character of the contract which is to be reduced to writing, and applies to oral agreements to execute a written agreement . . . for the sale of goods, wares, and merchandise . . ." (See 23 Cal.Jur.2d, Frauds, Statute of, § 142, pp. 424-425.)

Lastly, it is contended that part payment by appellant to respondent removes the agreement from the bar of the statute of frauds. The basis for this contention is the fact that respondent fully performed and was fully paid for performing the Hanks-Leavell contract.

It is stated in 23 California Jurisprudence 2d, Frauds, Statute of, section 129, page 400, as follows in pertinent part:

"To remove an oral contract from the operation of the statute of frauds, the acts of performance relied on for that purpose must be unequivocally referable to the oral agreement . . . . The acts relied on must clearly appear to have been performed in pursuance of a particular contract itself, and not because of the existence of some other contractual relationship or for some other reason. It is not enough, therefore, that the acts of part performance relied on amount to evidence

of some contractual agreement. The acts in question must constitute unequivocal and satisfactory evidence only of the contract sought to be removed from the operation of the statute."

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.