JAMES A. HART, Plaintiff and Respondent, v. BILLINGS
PUBLIC STOCKYARDS, a Montana Corporation, Defend-
ant and Appellant.

No. 11957.
Submitted April 14, 1971.
Decided June 7, 1971.
Rehearing Denied July 8, 1971.
486 P.2d 120.

346

Hutton, Schiltz & Sheehy, John C. Sheehy, argued, Billings, for appellant.

Sandall, Moses & Cavan, D. Frank Kampfe, argued, Billings, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is a debt action by a director and officer of a corporation to collect a $10,000 commission from the corporation for his services in securing a purchaser for all of its real estate and personal property pursuant to an alleged agreement. From a judgment upon a jury verdict in favor of the director and officer for $10,000 and interest in the district court of Yellowstone County, the corporation appeals.

Plaintiff and respondent is James A. Hart, the vice-president and a director of Billings Public Stockyards, a Montana corporation, defendant and appellant in the instant case.

At all pertinent times prior to the sale forming the basis of plaintiff's claim, the corporation was the owner of approxi-

mately 42 acres of land on the south side of Billings on which was situated a livestock commission house, with offices, stockyards, and other equipment and fixtures suitable for the operation of a livestock auction business and commission house. The corporation leased the land, buildings, equipment and fixtures to Public Livestock Market Center which operated the business using the corporation's property pursuant to a five year lease which would expire on June 1, 1968, if not renewed by the lessee under a renewal option granted it under the lease. On April 29, 1968, the lessee notified the corporation it would not renew the lease.

Earlier, on July 6, 1967 at the annual meeting of the stockholders of the corporation, the question of sale of the property of the corporation was considered by the stockholders. A motion by one of the stockholders, L. R. Rector, that the Board of Directors be given authority to price the corporation's property to a prospective buyer at $700,000 or more was defeated, 346 to 256. Thereafter the following action took place as reflected in the minutes of the corporation:

"Chris Shaffer made a motion that the Board of Directors be given the authority and vote of confidence in the negotiating for the possible sale of the stockyards property, with actual sale subject to Stockholders approval. Motion seconded by Bill Fox. Vote called for and motion passed unanimous."

At all times pertinent to this action there were 922 shares of stock in the corporation issued and outstanding, which were held by 20 individuals and organizations.

The officers of the corporation, beginning on July 1, 1967 and continuing at all pertinent times were K. P. Lucien, president; James A. Hart (plaintiff and respondent), vice-president; and L. R. Rector, secretary.

The directors at all pertinent times and their respective holdings of the issued and outstanding shares of the capital stock of the corporation were: K. P. Lucien—53.34 shares; James A. Hart (plaintiff and respondent)—105 shares; L. R.

Rector (including stock held by Rector Pension Fund)—111 shares; William Fox (stock held by Fox Ranches, Inc.)—120 shares; and Ing Svaare—60 shares. The director's collective stock ownership thus totaled 449.34 shares of 922 shares of stock outstanding.

On May 4, 1968, a special meeting of the Board of Directors of the corporation was called to discuss the terms of a proposal for the sale of the corporation's property. Plaintiff Hart had been in contact with a real estate firm in Billings, Hall and Hall. He proposed that the corporation, through Hall and Hall, sell their property for $790,000, less 5% to the real estate firm and $10,000 to himself. The minutes of the Board of Directors' meeting, at which all directors were in attendance, reflect the following action:

"Motion was made by Ing Svaare that yards be priced to prospective buyer at $790,000.00, less 5% to real estate dealer and $10,000 to Jim Hart, seconded by L. R. Rector. Unanimously approved."

The prospective buyer plaintiff Hart was talking about to the directors, though he declined to disclose his name, was Howard Kostbade of Chicago.

The minutes of the same directors' meeting also disclose the following entry:

"Motion made by L. R. Rector that if sale is not negotiated by Thursday A.M. May 9th, that Jim Hart contact Producers Marketing Ass'n to make date to open negotiations for sale and lease of Yards. Seconded by Ing Svaare. Unanimously approved."

When Kostbade did not appear on May 7 or May 8, Hart went to the realtors, Hall and Hall, and was advised by them that Kostbade wanted assurance that 51% of the stockholders of the corporation agreed to the terms of the sale. Plaintiff Hart then secured the following instrument with signatures thereon:

## "AGREEMENT

"The undersigned stockholders agree to give Hall and Hall, Incorporated, an open listing to consummate the sale of the Billings Public Stockyards at Billings, Montana, which is comprised of approximately 42 acres, more or less according to the Government survey thereof, buildings, pens to Howard Kostbade of Chicago, Illinois, or his associates.

"The selling price has been set by the stockholders at $790,-000.00. All cafe equipment is included in the purchase price and possession will be given on 1 July, 1968.

S/"James A. Hart ......................................................... 112 shares
S/"Robert Ellerd, Proxy by J. A. Hart ..................... 50 shares
S/"Wilson Richards, Proxy by J. A. Hart ................. 100 shares
S/"L. R. Rector ................................................................ 105 shares
S/"R. J. Casper ............................................................... 60 shares
S/"K. P. Lucien ............................................................... 70 shares
S/"Claude B. Smith ....................................................... 100 shares
S/"William Fox ............................................................... 120 shares

Kostbade came to Billings on May 16, 1968 to look over the property, but eventually nothing came of him as a prospective purchaser because he was not interested in purchasing at the price quoted.

Plaintiff Hart had other irons in the fire. He had been reporting on possible sale prices to James A. Wempner, a Billings banker, who was working for an undisclosed principal. The other directors and stockholders were not aware of these contacts by Hart. Before May 14, while the Kostbade deal was still pending for $790,000, Hart gave Wempner a figure of $750,000.

On May 29, Wempner told Hart he thought there was a possibility of a prospective deal with his undisclosed principal. They discussed the terms of the purchase and drew up the following document:

"BILLINGS PUBLIC STOCKYARDS

"Company Correspondence

"Date May 29, 1968

"To Mr. Jim Wempner, Midland National Bank

"Subject    Sale of Property

"We the undersigned, owners of Billings Public Stockyards Property and Auction Market and license, do hereby agree to sell the entire property consisting of approximately 42 acres plus the operating license, for $750,000.

"Terms will be $250,000 down paid with $50,000 at the time of signing and $200,000 at possession date of July 1, 1968.

"Balance to be paid in two payments of $250,000, July 1, 1969, and $250,000 July 1, 1970, together with payments of accrued interest at 6½% per annum beginning July 1, 1968.

"It is further agreed that the Purchaser has the option of purchasing all Stockyard equipment now being used by the Public Livestock Market Center, at the price determined under Section 14 of the lease agreement between the Public Livestock Market and Billings Public Stockyards, dated July 1, 1963.

"This agreement becomes void after 12:00 midnight, Saturday, June 1, 1968.

"BILLINGS PUBLIC STOCKYARDS
S/"K. P. Lucien, President
S/"James A. Hart, Vice President
----------------------------------, Sec'y-Treasurer
S/"William Fox"

No meeting of the Board of Directors was called to approve the document. It was signed by only three directors, Lucien, Fox and Hart, Each signed separately and out of the presence of the other.

The document was signed in duplicate. One copy was taken by Wempner to his undisclosed principal, who later turned out to be Patrick K. Goggins. The other copy was retained by Hart who thereafter obtained the signatures of secretary and director Rector, and stockholder Brant. Subsequently

Hart signed the name of stockholder Wilson Richards, as his proxy upon telegraphic authorization. The remaining director, Ing Svaare, was not asked to sign either copy. The total shareholdings of the stockholders signing the copy retained by Hart was 509.34 shares, which did not amount to two-thirds of the outstanding shares (approximately 615 shares out of a total of 922 shares).

The sale as proposed eventually took place and a contract of sale was signed on June 1, 1968 by Patrick Goggins as buyer, and by Lucien, President; Hart, vice-president; Rector, secretary; and Fox, director; all acting on behalf of the corporation, as seller. Under the terms of the agreement, approval of the sale to Goggins by duly adopted resolutions of the directors and stockholders was required. This matter came up at the annual meeting of the stockholders of the corporation on June 15, 1968, followed by a directors' meeting.

At the stockholders' meeting a resolution duly authorizing the sale and ratifying the sales contract was adopted. Neither the sales contract, nor for that matter any writing of any kind, contained any reference to payment of $10,000 to plaintiff Hart. Although Hart was present at the stockholders' meeting, neither he nor anyone in his behalf moved to pay him this fee, nor were the stockholders informed that Hart was making this claim. Before adoption of the resolution approving the sale to Goggins, each stockholder was given a written breakdown of the distribution of the proceeds of the sale by the corporation's accountant and nothing therein showed Hart was to receive $10,000 of the sale proceeds. The stockholders were also given a copy of the corporation's cash position on May 31, 1968, the prospective receipts from the sales contract, and the disposition of all the funds down to zero. No provision appeared therein for the $10,000 claimed by Hart.

Also prepared by the corporation's accountant and distributed to the stockholders at the meeting was a document relating to debentures owed by the corporation to its stockholders

in which the stockholders agreed to waive a portion of the accrued interest thereon so that distribution of the funds could be carried out as indicated by the accountant's break-down. Plaintiff Hart received a copy of this document and signed for the same. An appropriate resolution carrying out this waiver of interest and payment of the debentures on an installment basis as the proceeds of the Goggins sale were received was duly adopted, by unanimous vote.

At the directors' meeting immediately following the stockholders' meeting on June 15, 1968, the resolution authorizing the officers to complete the Goggins sale was duly adopted. At this meeting Hart first brought up the matter of payment of his claim for $10,000. The directors refused to pay it, and instead adopted the following motion as reflected in their minutes:

"On motion duly made by Ingvard Svaare, seconded by L. R. Rector, and unanimously carried, it was unanimously agreed that the matter of paying Mr. James A. Hart a $10,000 commission on the sale of the corporation properties be brought up at the 1969 annual meeting of the stockholders because at the 1968 annual stockholders meeting no action was taken on this matter and Mr. Hart is of the opinion that it is a part of the sale."

Thereafter, pursuant to request of stockholders, Brant, Richards, Rector and plaintiff Hart, collectively the owners of more than 25% of the capital stock of the corporation, a special meeting of the stockholders was held on September 14, 1968 "to ascertain to our satisfaction why a majority of the Board of Directors have refused to honor their commitment of May 4, 1968, to James A. Hart regarding the sale of the Stockyard Property."

At this special stockholders' meeting the following action transpired as reflected by the minutes:

"Mr. L. R. Rector made move to pay Jim Hart the $10,000.00

as his commission for sale of Yards. Discussion made by all Shareholders present. Motion seconded by Halsey Brant.

"President Lucien appointed Claude Smith and Jim Schindele to tally votes. Vote recorded as follows:

"For motion— 363 votes
"Against motion—529 votes

—————

892"

It is undisputed that at no time was Hart a licensed real estate agent or broker under Montana's Real Estate Licensing Act.

Plaintiff Hart filed the present action to collect his claimed $10,000 commission on August 23, 1968. Defendent corporation answered on May 8, 1969 setting forth the following defenses: (1) failure to state a claim, (2) statute of frauds, (3) waiver, (4) breach of fiduciary duty, (5) laches, (6) a general denial of the alleged agreement to pay a commission to plaintiff.

Trial was held in May 1970 and resulted in a 10-2 jury verdict in favor of plaintiff Hart for $10,000 plus interest. Judgment was entered thereon. Defendant's motion for judgment notwithstanding the verdict or alternatively for a new trial was denied by the district court. Defendant now appeals from the final judgment.

The principal underlying issues for review raised by defendant and appellant in this appeal are:

1. Is plaintiff's claim barred by the statute of frauds?

2. Is plaintiff's claim unenforceable by reason of breach of any fiduciary duty of disclosure to and approval by the stockholders of the corporation?

3. Is plaintiff's claim unenforceable as an illegal contract under Montana's Real Estate Licensing Act?

On the first issue, defendant corporation contends that plaintiff's claim concerning payment of the $10,000 commission is barred by the statute of frauds (section 13-606, R.C.M. 1947) because there is no note or memorandum in writing

signed by the corporation concerning payment of a commission on the Goggins sale. Plaintiff, on the other hand, claims removal of the bar of the statute of frauds where, as here, the minutes of the corporation constitute a writing concerning payment of the commission on the Kostbade sale, and there is a later fully executed oral modification thereof to pay a like commission on the Goggins sale. In any event, plaintiff argues, the corporation has received and retained the benefits of the Goggins sale and is estopped to deny the existence of the contract to pay the commission.

Section 13-606, R.C.M.1947, provides in pertinent part:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: "* * *

"5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission."

Assuming, arguendo, that the directors of the corporation had authority to contract with one of its directors and officers to pay him a real estate commission for procuring a purchaser for all the corporation's real estate and personal property, the minutes of the Board of Directors' meeting of May 4, 1968, duly signed by the proper officials of the corporation, constitute a written note or memorandum of an agreement to pay a commission to plaintiff Hart, satisfying the requirements of section 13-606. However, those minutes referred to a sale to a "prospective buyer" for $790,000, less 5% to the "real estate dealer", and $10,000 to plaintiff Hart. The meaning of the terms "prospective buyer" and "real estate dealer" was made clear 10 days later by the written instrument granting Hall and Hall, a Billings real estate firm, an open listing to sell the corporation property for $790,000 to Howard Kostbade of Chicago or his associates. The minutes of the directors' meeting of May 4 and the subsequent written listing agreement clearly relate to a specific sale on specific terms, i.e. a sale

for $790,000 to Kostbade, with Hall and Hall to receive a 5% commission and Hart to receive a commission of $10,000. The sale to Kostbade never was consummated, so plaintiff Hart never became entitled to the $10,000 commission.

Conceding, arguendo, that the written memorandum relating to the Kostbade sale was later orally modified to cover the Goggins sale, such modification rests entirely on oral testimony of a highly conflicting and contradictory nature. This evidence was objected to by defendant on the grounds that it would vary the terms of the written memorandum covering the terms of sale delivered by the corporation to Mr. Wempner of the Midland National Bank, who was representing his then undisclosed principal, Mr. Goggins. The evidence was admitted under a reserved ruling of the court.

Even with this evidence in the case, the entire foundation of the claimed modification rests on parol. There is no writing providing for payment of a $10,000 commission to Hart on the Goggins sale or even suggesting it. If there was a modification of the Kostbade arrangement to cover a $10,000 commission to Hart on the Goggins sale, it was purely and simply an oral modification.

Any action to collect a broker's commission for the sale of real estate must be founded on a written instrument. Roscow v. Bara, 114 Mont. 246, 255, 135 P.2d 364, 366; Reilly v. Maw, 146 Mont. 145, 405 P.2d 440. In *Roscow* a broker sued on a written contract whereby he was to secure a purchaser for defendant's real estate for a commission; instead the broker produced a lessee who entered into a lease agreement with option to purchase with defendant, which was later terminated by mutual consent and a straight lease substituted. In denying the broker recovery of a commission, the Court said:

"The next argument made by the plaintiff is that there is sufficient evidence to show that the written contract was modified by parol. This argument is not tenable by virtue of the fact that section [13-606, R.C.M.1947] requires a brok-

er's contract for the sale of real estate to be in writing. This court has ruled directly upon this question. (Gantt v. Harper, 82 Mont. 393, 267 P. 296, 297.) In that case it is held: 'Our statute of frauds requires a note or memorandum in writing, subscribed by the party to be charged, or his agent, as a condition precedent to recovery of a broker's commission upon an agreement authorizing or employing an agent or broker to purchase or sell real estate. [Section 13-606, R.C.M.1947]. This statute has frequently been considered and applied by this court and its provisions are held to be mandatory (Skinner v. Red Lodge Brewing Co., 79 Mont. 292, 256 P. 173) as to the original agreement, *as well as any subsequent modification of the terms thereof.*' While appellant argues that certain letters constituted a modification, standing alone they clearly did not do so. She relies chiefly on parol evidence to show modification and even if that evidence did show modification, it would avail her nothing because of [Section 13-606, R.C.M. 1947]." (Bracketed statute of frauds code section revised to present section number.)

But plaintiff Hart argues that where an oral modification is fully performed and executed, as here, the bar of the statute of frauds is removed, citing section 13-907, R.C.M.1947, in support.

Section 13-907, R.C.M.1947, provides as follows:

"*Written contracts—how modified.* A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The oral agreement to pay a commission of $10,000 to Hart for his services in procuring a purchaser is not an "executed oral agreement" within the meaning of the foregoing statute. Whatever may be said of performance thereunder by Hart, there is no performance whatever by the corporation of the alleged oral agreement to pay the commission. To accomplish a modification or alteration of a written contract by an executed oral agreement, there must be complete execution of the

agreement by both parties. Continental Oil Co. v. Bell, 94 Mont. 123, 134, 21 P.2d 65, 67; Ikovich v. Silver Bow Motor Car Co., 117 Mont. 268, 157 P.2d 785; Bauer v. Monroe, 117 Mont. 306, 158 P.2d 485. As aptly expressed in Continental Oil Co.:

"Section [13-907, R.C.M.1947] provides that 'a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.' An oral agreement altering a written agreement is not executed unless its terms have been fully performed, and performance on the one side is not sufficient. There must be a complete execution of the obligation of both parties in order to bring the modification within the terms of the statute. (Citing cases)." [Bracketed code section number substituted for former number.]

Moreover, whenever a broker's contract of employment fails to comply with the requirements of the statute, the subsequent procurement by him of a purchaser in accordance with the terms of the invalid agreement is not deemed to constitute such partial performance of the contract as will entitle him to a commission on the sale of the property. Herzog v. Blatt, 80 Cal.App.2d 340, 180 P.2d 30; Augustine v. Trucco, 124 Cal.App.2d 229, 268 P.2d 780; 23 Cal. Jur.2d, Frauds, Statute of § 78, p. 320.

The reasons for requiring full execution by both parties of an oral agreement or modification to pay a real estate commission are clear. If the rule were otherwise, parol agreements without anything to verify them but oral testimony of their existence would nullify the purposes and provisions of the statute of frauds requiring a written memorandum signed by the party to be charged. The purpose of section 13-606 is to prevent fraud by disallowing parol evidence of an agreement to pay a real estate commission, and requiring instead written. proof of such agreement signed by the party to be charged thereunder. To permit parol proof of the existence of such agreement and proof of complete execution thereof by proof·

of sale, is to circumvent the positive requirements of the statute of frauds and render it a nullity.

Finally, the alleged performance by plaintiff Hart of procuring a purchaser of the property under the oral contract for the $100,000 commission is consistent with the performance of his duties as director and officer of the corporation and not necessarily pursuant to the alleged oral contract on which plaintiff bases his claim. This is insufficient to remove the bar of the statute of frauds under the completed performance of oral contract exception. 23 Cal.Jur.2d, Frauds, Statute of § 129, p. 400, expresses the principle in this language:

"To remove an oral contract from the operation of the statute of frauds, the acts of performance relied on for that purpose must be unequivocally referable to the oral agreement alone. Acts which, although actually done in the performance of a particular contract, nevertheless permit an explanation for their performance which does not necessarily presuppose the existence of the agreement are not generally deemed to be such part performance as is sufficient to take the contract out of the scope of the statute. The acts relied on must clearly appear to have been performed in pursuance of a particular contract itself, and not because of the existence of some other contractual relationship, or for some other reason." Citing in support: Trout v. Ogilvie, 41 Cal.App. 167, 182 P. 333; Stevenson v. Pantaleone, 131 Cal.App. 401, 21 P.2d 703; American Casualty Co. v. Curran Productions, Inc., 212 Cal.App.2d 386, 28 Cal.Rptr. 131.

For the foregoing reasons, the executed oral contract exception to the statute of frauds does not apply here.

■■ Plaintiff Hart also invokes the principle of estoppel, contending that the corporation by accepting and retaining the benefits of the Goggins sale contract is now estopped from raising the bar of the statute of frauds. This contention is a misapplication of the principle of estoppel. Retention of the benefits of the contract of sale to Goggins may well estop the

corporation from denying Hart's agency statuts and authority to act for the corporation in the Goggins sale. But it does not allow that the corporation is estopped from denying the existence of a valid contract to pay Hart, a director and officer of the corporation, a commission of $10,000 for his services in the Goggins sale. An estoppel against a seller preventing pleading the bar of the statute of frauds can not be predicated on his refusal to pay a real estate commission under an oral contract. Herzog v. Blatt, supra; Augustine v. Trucco, supra. This is so even though the broker, acting pursuant to such oral' agreement, has rendered services to the seller in endeavoring to procure a purchaser. Hicks v. Post, 154 Cal. 22, 96 P. 878; Augustine v. Trucco, supra. A broker is presumed to know that an oral contract for the payment of a commission for the sale of real estate is invalid. 23 Cal.Jur.2d, Frauds, Statute of § 146, p. 432. This principle is particularly applicable under the circumstances of the instant case where the broker is also a director and officer of the corporate vendor, where the sale involves all the corporate property and stockholder approval is involved, and where a fiduciary relationship requiring full disclosure by plaintiff Hart to all directors and stockholders arises. Accordingly, a plea of estoppel will be rejected unless the circumstances reveal a change in position on the part of the broker requiring equitable intervention. Colburn v. Sessin, 94 Cal.App.2d 4, 209 P.2d 989; Augustine v. Trucco, supra. To rule otherwise would nullify the purposes and requirements of the statute of frauds heretofore mentioned.

Plaintiff further argues that the agreement to pay the commission was a part of the Goggins sale, and approval of that sale by the directors and stockholders at their meetings of June 15, 1968 constitutes approval and ratification of the agreement to pay him a $10,000 commission. The agreement to pay the $10,000 commission rests entirely on parol, there being no writing to substantiate it. For the reasons and upon the authorities heretofore noted, a written memorandum is

required to satisfy the statute of frauds. There being none, plaintiff's contention fails. Additionally, without going into detail but as previously set forth, it is clear that the stockholders had no knowledge nor were they informed of any agreement to pay a $10,000 commission to Hart.

Defendant corporation preserved its defense of the statute of frauds throughout the trial. It objected to the introduction of oral testimony to prove the existence of an agreement to pay Hart a commission on the Goggins sale; it moved for a dismissal of plaintiff's claim on the basis of the statute of frauds at the conclusion of plaintiff's case-in-chief, and later at the conclusion of all the evidence; and, it moved for judgment notwithstanding the verdict on the same grounds thereafter. The district court should have directed a verdict for defendant as a matter of law on its defense of the statute of frauds.

As the first issue for review disposes of this appeal, no useful purpose would be served by a discussion of the remaining issues.

The judgment of the district court is reversed. This cause is remanded to the district court for entry of judgment for defendant.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DALY, CASTLES and JOHN C. HARRISON, concur.