Albert H. and Doris G. THRONDSON, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Albert H. and Doris G. THRONDSON, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

J. Leonard SCHMITZ and Alice Schmitz, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 24342, 24408 and 24423.

United States Court of Appeals, Ninth Circuit.

March 28, 1972.

Michael Traynor (argued), Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for petitioners-appellants-appellees.

Stephen J. Schwartz (argued), Peter J. Donnici (argued), Richard Saveri, San Francisco, Cal., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, William Massar, Bennet N. Hollander, Richard M. Han, Acting Chief Counsel, INS, Washington, D. C., for respondent-appellee-appellant.

Before MERRILL, KOELSCH and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

In these consolidated petitions for review of a decision of the Tax Court, 51 T.C. 306 (1968), the question presented is whether certain payments made in settlement of the dissolution of a partnership should be allocated to goodwill or to a *covenant not to compete.*

Throndson and Schmitz were partners in the practice of dentistry, both in San Francisco and in San Rafael, California. In 1962 they agreed to dissolve their partnership. Schmitz had decided to confine his practice to San Rafael. Thorndson did not particularly desire to continue practicing there. The partners owned a building in San Rafael and the San Rafael practice was the more valuable.

■ Schmitz's attorney suggested to Schmitz that he offer $70,000–$34,000 for the building payable immediately and $36,000 payable at the rate of $12,000 a year for three years. Schmitz thought this amount was too high. However, when his attorney suggested that the $36,000 might be allocated to a covenant not to compete and explained the tax consequences of the amortization

of such payments,[1] Schmitz agreed. The offer of $34,000 immediately and $12,000 a year for three years was referred to Throndson's attorney. Nothing was said, however, about the covenant not to compete. Two days later, Throndson's attorney, after conferring with Throndson, advised Schmitz's attorney that Throndson agreed to the offer. Schmitz's attorney then asked Throndson's attorney to draft a letter confirming the terms of the agreement and, for the first time, asked that the $36,000 be specified as for a covenant not to compete. Throndson's attorney never advised Throndson of the fact that the $36,000 was to be allocated in such a fashion. The attorney was not aware of the tax consequences of such an allocation and had in mind only the fact that Throndson did not wish to practice in San Rafael. Throndson's attorney, without advising Throndson of the allocation provision and without providing him with a copy of his letter, proceeded to write Schmitz's attorney as follows:

"This is to confirm the terms of the settlement of the partnership termination of Doctors Throndson and Schmitz.

Dr. Schmitz will pay $34,000 for Dr. Throndson's interest in the real property and $12,000.00 per year payable January 2, 1963, 1964 and 1965 for a covenant for Dr. Throndson not to practice in Marin County.

Dr. Throndson will also take the San Francisco practice together with accounts receivable therein.

Dr. Schmitz will have the practice and accounts receivable in San Rafael.

It is understood that the cash in the bank will be divided equally and that no expenditures will be made from either office pending the termination of the partnership which will probably conclude this week.

I will have Dr. Throndson execute and forward a signed copy of this agreement to you."

Schmitz's attorney subsequently advised Throndson's attorney that he was satisfied with the letter and no agreement ever was executed by Throndson. All payments in due course were made. Throndson, however, never having seen his attorney's letter, knew nothing about the proposed allocation of payments.

In tax returns for 1963, Schmitz deducted the $12,000 paid for the covenant not to compete while Throndson reported $36,000 as a long-term capital gain from the sale of goodwill.[2] The Commissioner, in order to protect the revenues, took inconsistent positions in his deficiency notices. He rejected Throndson's treatment of the payments and also disallowed Schmitz's deduction.

The matters were consolidated before the Tax Court, where, as that court recognized, "[i]n these consolidated cases respondent [Commissioner] has taken the position of a stakeholder. He does not contend that all deficiencies determined should be sustained in full but contends only that the transaction be treated uniformly as to both parties." 51 T.C. at 313.

The Tax Court determined that strong proof had been adduced to demonstrate that a covenant by Throndson was in

---

1. The portion of the selling price properly allocable to the seller's covenant not to compete is ordinary income to the seller and an amortizable item for the buyer. Ullman v. Commissioner of Internal Revenue, 264 F.2d 305, 307 (2d Cir. 1959); see Treas.Reg. [26 C.F.R.] § 1.167(a)–3.

2. See note 1, supra. Conversely, a portion of a selling price allocable to goodwill instead of a covenant not to compete may qualify as capital gain to the seller but

may not be amortized by the buyer. Thus, the tax considerations as to buyer and seller are countervailing, and the Commissioner often, as here, is simply interested in having the transaction reported consistently by the two parties. See Schulz v. Commissioner of Internal Revenue, 294 F.2d 52 (9th Cir. 1961); Commissioner of Internal Revenue v. Danielson, 378 F.2d 771 (3d Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967).

fact of little or no value to Schmitz, whereas the partnership had considerable goodwill not otherwise accounted for. It held:

"On the basis of the record as a whole, we conclude that the $36,000 ostensibly paid for a covenant not to compete was in reality attributable to Throndson's interest in the goodwill established at the San Rafael practice in Marin County." *Id.* at 322.

In the present proceedings the Commissioner takes an active part which serves to align him with Schmitz. As stated in its brief, the Government here is "anxious to preserve the rule of law, rejected by the Tax Court, that where, in the sale of a business, the parties allocate a specified amount to be paid by the buyer to the seller for the seller's covenant not to compete, and the Commissioner does not question that amount, the allocation governs the tax consequences for all concerned, unless the taxpayer attempting to disregard the allocation establishes that there was fraud, duress, undue influence or other similar basis for invalidating the agreement." Such was the holding in Commissioner v. Danielson, 378 F.2d 771 (3d Cir.) (en banc), cert. denied, 389 U.S. 858, 88 S. Ct. 94, 19 L.Ed.2d 123 (1967).

We conclude that we need not reach the merits of the *Danielson* rule, since it would be operative only as to a binding contract concerning the manner in which payments are to be allocated.

Here there was no contract upon this subject; the minds of the parties never even remotely met. Schmitz contends that Throndson's attorney had ostensible authority to enter into such a contract on Throndson's behalf. We cannot agree.

As to the asserted underlying covenant not to compete, there could have been no ostensible authority. Under the California statute of frauds such contract, covering a span of three years, was required to be in writing because it could not be performed within a year from the making. Cal.Civil Code § 1624(1); *see* Summerhays v. Scheu, 10 Cal.App.2d 574, 52 P.2d 512 (1935); *cf.* Bouchard v. Cole, 143 Cal.App.2d 93, 299 P.2d 697 (1956). The letter written by Throndson's attorney could not suffice as a writing. Under California law an agent cannot bind his principal to such a contract (one required by law to be in writing) save where his authority to do so is itself in writing. Cal. Civil Code § 2309; [3] *see, e. g.,* Georgia Peanut Co. v. Famo Products Co., 96 F.2d 440 (9th Cir. 1938); Leonard v. Gallagher, 235 Cal.App.2d 362, 371, 45 Cal.Rptr. 211, 217 (1965); Monte Carlo Motors, Inc. v. Volkswagenwerk, G.M.B.H., 177 Cal. App.2d 107, 111–112, 1 Cal.Rptr. 920, 922 (1960). Thus, not only must the agent's authority be express; it must be evidenced in the fashion best designed to avoid disputes as to its existence.[4]

This leaves no room for ostensible authority. One cannot justifiably rely to

3. Ratification, to be effective, would also have to be in writing, Cal.Civil Code § 2310, and it would require Throndson's knowledge of the alleged covenant, *see, e. g.,* Chastain v. Belmont, 43 Cal.2d 45, 58, 271 P.2d 498, 506 (1954). Throndson's acceptance of payments from Schmitz, therefore, could not constitute a ratification where that acceptance was consistent with Throndson's knowledge merely of a sale of his interests. *Compare* Columbia Outfitting Co. v. Freeman, 36 Cal.2d 216, 221, 223 P.2d 21, 25 (1950). *See also* the discussion of performance in text, *infra.*

4. Schmitz contends that § 2309 should not apply to this case on the grounds that the provision properly applies only to disputes between principal and agent. The California Supreme Court, however, has held, to the contrary, that § 2309 is not relevant to disputes between principal and agent and that its sphere of influence is the area of disputes between a principal and a third party, e. g., Throndson and Schmitz. As to this area, the court said of § 2309: "The section definitely curtails the third party's rights against the principal." Sunset-Sternau Food Co. v. Bonzi, 60 Cal.2d 834, 841, 36 Cal.Rptr. 741, 746, 389 P.2d 133, 138 (1964).

**1026**

one's detriment on that which the law has declared to be unreliable. While principles of estoppel may create exceptions under certain circumstances (essentially involving representation by the principal that he recognizes the contract in question or that his agent has authority to enter into such contract[5]), those circumstances are not present here. Throndson, mute and in total ignorance of counsel's discussion, did not himself say or do anything on which justifiable reliance might have been placed.[6]

As to the asserted agreement to allocate payments, it was from point of ostensible authority inextricably intertwined with the underlying covenant. Without authority to create the covenant (to which the principal otherwise had not agreed) there could here be no reliable appearance of authority to allocate payments to it.

■ Nor do Schmitz's payments and Throndson's receipt of the $70,000 serve to take the alleged covenant not to compete and its related agreement of allocation from application of this statutory scheme. That the agreed price had been paid in full and accepted does indeed corroborate the assertion (undisputed) that a contract existed for sale of Throndson's interests for that price. In no respect, however, do the facts of pay-

ments and acceptance bear on the disputed issue of allocation of the payments to a covenant not to compete. Those facts are as consistent with Throndson's position as with Schmitz's. Performance will remove an alleged contract from operation of the statute of frauds only when it is unequivocally referable to that contract. *See, e.g.,* Schick Service, Inc. v. Jones, 173 F.2d 969, 976–978 (9th Cir.), cert. denied, 338 U.S. 819, 70 S.Ct. 62, 94 L.Ed. 497 (1949); American Casualty Co. v. Curran Productions, Inc., 212 Cal.App.2d 386, 392–393, 28 Cal. Rptr. 131, 135 (1963).

■ Since no contract existed as to the manner in which the payments were to be allocated, mutual intent of the parties in this respect was not available as a consideration. Under these circumstances the tax consequences attaching to the transactions must be ascertained on the basis of objective standards. From the record made before it and for the reasons stated in its opinion, we hold that the Tax Court must be affirmed on its determination that the economic realities surrounding the payments require that the payments be treated as for goodwill rather than as for a covenant not to compete.[7]

Judgment affirmed.

---

5. *See, e. g.,* Sunset-Sternau Food Co. v. American Almond Products Co., 259 F.2d 93 (9th Cir. 1958); Moore v. Day, 123 Cal.App.2d 134, 266 P.2d 51 (1954); Le Blond v. Wolfe, 83 Cal.App.2d 282, 188 P.2d 278 (1948).

6. *Compare* Georgia Peanut Co. v. Famo Products Co., 96 F.2d 440 (9th Cir. 1938); Ernst v. Searle, 218 Cal. 233, 22 P.2d 715 (1933); Seymour v. Oelrichs, 156 Cal. 782, 790–791, 106 P. 88, 92 (1909); Monte Carlo Motors, Inc. v.

Volkswagenwerk, G.M.B.H., 177 Cal.App. 2d 107, 1 Cal.Rptr. 920 (1960); Cottle v. Crockett, 1 Rag. 80, 86 (1922).

7. Our result leaves wholly unsettled the rights of the parties as between themselves in this anomalous state of affairs. However, resolution of those problems is not the responsibility of a federal tax forum. We are concerned only with the facts that payments were made and received and tax consequences attach to those transactions.