No. 13792

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

E. F. CARNELL,

Plaintiff and Appellant,

-vs-

VERNON F. WATSON,

Defendant and Respondent.

---

Appeal from:  District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair & Murphy, Billings, Montana
Chris Nelson and Richard Anderson argued, Billings,
Montana

For Respondent:

Cure and Borer, Great Falls, Montana
Maxon R. Davis argued, Great Falls, Montana

---

Submitted:  March 9, 1978

Decided: APR 2 ⬚ ⬚

Filed: APR ⬚ ⬚ ⬚

Thomas Jr. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff E. F. Carnell, a real estate broker, appeals from a grant of summary judgment entered in the District Court, Judith Basin County, denying recovery of a real estate sales commission.

Plaintiff (the broker) is a real estate broker residing in Lewistown, Montana. Defendant Vernon F. Watson (the seller) owns farm and ranch properties in the Judith Basin area. Before the events leading to this lawsuit, the parties had previously discussed the possibility of selling some of the land involved. In June 1972, the parties verbally agreed to this and plaintiff Carnell was to be the broker. Shortly thereafter the broker found prospective purchasers for property known as the Green Ranch owned by the seller and his wife.

On July 30, 1972, the parties signed a written listing agreement which gave the broker the "exclusive right to sell" the Green Ranch. This agreement, denominated "APPOINTMENT OF AGENT" was printed on a form prepared by the broker. The broker filled in specific terms and conditions in his own handwriting. The agreement provided for a 29 percent cash down payment and a 5 percent commission on the sale. The broker retained the original and one copy of the agreement; he did not give a copy to the seller.

It was the seller's understanding that the land would be sold as an entire piece and would not be split up into separate parcels. The broker found prospective purchasers for the land, but they desired the land to be split into separate parcels, and requested a split down payment, which was to consist of a 15 percent earnest money payment and a 14 percent payment upon taking possession. In his deposition the broker contends the seller agreed to the split down payment, and that is one of the issues he raises in this appeal. The seller denies that he either agreed to that, or authorized any other change in the listing agreement.

-2-

The broker admits he altered the listing agreement to provide for the split down payment as requested by the prospective purchasers. Neither he nor the seller initialed this change. The broker also altered the agreement to provide that his commission on the sale would be taken as a 5 percent cut from each of the two down payments. This change in the agreement was initialed by the broker, but not by the seller. The broker made each of these changes in his own handwriting.

When the broker realized the seller was not willing to accept a split down payment he struck out the alterations in the listing agreement. Neither party initialed the strike-outs. Ultimately the prospective purchasers agreed to pay the entire 29 percent down payment before taking possession, and they tendered "binder" checks totaling $30,000 to the broker. The broker then had an attorney draft a contract for deed from the terms and description contained on the listing agreement and prepare warranty deeds for each of the prospective purchasers. Each of the purchasers signed the contract for deed. The prospective purchasers then tendered checks payable to the seller and his wife in the amount of the balance of the down payment. The broker placed all of the down payment money in the Basin State Bank in Stanford, Montana. However, from that amount he deducted the 5 percent sales commission.

The broker then instructed the seller and his wife to go to the bank and sign the contract for deed and the warranty deeds. The seller refused to do so. The prospective purchasers then demanded the broker refund their down payment. After the deal fell through, the broker filed an action against the seller to recover a real estate commission.

The sole issue on appeal is whether summary judgment was properly granted.

Rule 56(c), M.R.Civ.P., provides that summary judgment is proper:

> "* * * if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The seller's motion for summary judgment was based on the pleadings, affidavits of the parties, and the broker's deposition. The thrust of seller's argument before the District Court and on appeal, is that the broker's alteration of the listing agreement without the seller's written consent thereto and the broker's failure to furnish the seller with a copy of the listing agreement, have the effect of invalidating that agreement.

In opposing summary judgment, the broker concedes he did not provide the seller with a copy of the listing agreement and that the seller did not consent in writing to the alterations in the listing agreement. Nevertheless, he argues that his failure to provide the seller with a copy of the listing agreement is not alone sufficient to relieve the seller of his obligations under the listing agreement. Moreover, he argues that there is a genuine factual disagreement--whether the seller verbally agreed to the alterations made by the broker.

Initially, the propriety of summary judgment turns on whether the law permits the seller's alleged verbal consent to the alteration to be considered as a genuine issue of material fact. The broker's argument that verbal modification can be considered in this situation flies in the face of the statute of frauds.

The listing agreement is within Montana's statute of frauds, section 13-606(5), R.C.M. 1947, which provides: "An agreement authorizing or employing an agent or broker to purchase or sell real estate for * * * a commission" is invalid unless in writing and "subscribed by the party to be charged, or his agent". This Court

stated in Hart v. Billings Public Stockyards, (1971), 157 Mont. 345, 356, 486 P.2d 120, citing Roscow v. Bara, (1943), 114 Mont. 246, 255, 135 P.2d 364:

> "'"This statute [section 13-606(5)] has frequently been considered and applied by this court and its provisions are held to be mandatory * * * as to the original agreement, <u>as well as any subsequent modification of the terms thereof</u>."'"

Moreover, section 13-907, R.C.M. 1947, limiting the scope of modification of written contracts, provides:

> "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

As unilaterally altered to provide for a split down payment, the listing agreement would be unenforceable under either section 13-606(5) or section 13-907. The first requires the subscription of the party against whom the altered agreement would be enforced, which is admittedly not present here. The second requires full execution of any verbal agreement for modification, also not present in this case.

Under these circumstances, the broker cannot avoid the effect of section 13-909, R.C.M. 1947, which provides:

> "<u>The intentional</u> destruction, cancellation, or <u>material alteration</u> of a written contract by a party entitled to any benefit under it, or with his consent, <u>extinguishes all the executory obligations of the contract in his favor against parties who do not consent to the act</u>." (Emphasis added.)

Public policy dictates that the alleged verbal consent of the seller to the material alterations of the contract, cannot be used as a basis to recover the commission. The material alteration cannot be saved by the alleged verbal consent.

It would be irregular to allow parole evidence of consent to an unsubscribed and unexecuted modification of a listing agreement in light of the statutory and decisional law which is uniformly suspicious of such modifications. We therefore hold the seller's

alleged verbal consent to the broker's alterations of the listing agreement was not a factual issue precluding summary judgment.

The remaining question is whether the seller was entitled to judgment as a matter of law. This Court stated in Smith v. Barnes, (1915), 51 Mont. 202, 211, 212, 149 P. 963:

> "* * * The legal effect of an alteration is to extinguish all the executory obligations of the contract in favor of the party responsible as against the parties who do not consent * * * and the appellant, if the change was an alteration procured by him, could not maintain in this action, nor maintain in any action, upon the contract, in either its original or its altered form."

The broker lost his right to recover a commission when he altered the listing agreement which gave rise to that right. His subsequent striking out the alterations did not restore his rights or revive the seller's obligations under the listing agreement, since it is the injured party only who has the power of such restoration and revival. 6 Corbin on Contracts §1317; Smith v. Barnes, supra.

Moreover, the broker's failure to provide the seller with a copy of the listing agreement also supports the granting of summary judgment. Section 66-1937, R.C.M. 1947, of the Real Estate License Act, provides that a broker may have his license suspended or revoked for:

> "(15) Failing voluntarily to furnish a copy of a written instrument to a party executing it at the time of its execution".

The seller argues this and the other grounds for the suspension or revocation of a broker's or salesman's license specified in section 66-1937, should be incorporated by implication into every agreement between a real estate broker or salesman and a client. He contends the broker's admitted violation of section 66-1937(15) should operate as a complete defense to his claim for a commission.

-6-

We agree the broker's failure to furnish the seller with a copy of the listing agreement bars the broker's recovery of a commission. It is doubtful the broker would have made the alterations involved, if he had at the time the listing agreement was executed provided a copy to the seller.

Under section 66-1940 of the Real Estate License Act, a violation of those provisions may result in both civil and criminal penalties, underscoring the importance of the Act's provisions as a measure of conduct. The provisions of the Real Estate License Act set a standard of conduct to which licensed brokers and salesmen must conform. If not, they must bear the consequences.

Policy reasons for requiring adherence to such guidelines were succinctly set forth by the Supreme Court of Utah, in Reese v. Harper, (1958), 8 Utah 2d 119, 329 P.2d 410, 412:

> "* * * The agent is issued a license and permitted to hold himself out to the public as qualified by training and experience to render a specialized service in the field of real estate transactions. There rests upon him the responsibility of honestly and fairly representing the interests of those who engage his services * * *. Unless the law demands this standard, instead of being the badge of competence and integrity it is supposed to be, the license would serve only as a foil to lure the unsuspecting public in to be duped by people more skilled and experienced in such affairs than are they, when they would be better off taking care of such business for themselves."

The need for stringent controls governing the conduct of the real estate business has never been greater. We are not unmindful that speculation in land in Montana in the last several years has skyrocketed, with no apparent end in sight. This sale of land as a limitless commodity, rather than as one of our most precious and irreplaceable resources, has also given birth to a burgeoning real estate industry. The area is bustling with those who are either getting directly into the act of buying and selling for speculative reasons, or indirectly by acting as brokers and real

estate agents. The rapid turnover of property is relentlessly encouraged by the brokers and agents. They are not however, without their responsibilities to the public. While the Real Estate License Act contains salutory provisions with regard to the conduct of brokers and agents, they are not exhaustive. The duty of a real estate broker or agent to deal fairly with his client ultimately arises from a separate fiduciary relationship between them, and not because of the existence of a licensing act. While a breach of a duty may also be a violation of the licensing act, it may also constitute an independent reason to deny a commission to the broker or agent--perhaps the most effective deterrent of all.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Alfred B. Coate, District
Judge, sitting in the vacant
seat on the Court.

-8-