MR. JUSTICE SHEEHY
dissenting:
It is straining the theory of fiduciary relationships a bit to hold that between a realtor and a seller of real property, the relationship exists before the execution of an enforceable listing agreement or earnest money agreement. A fiduciary relationship was held to exist before the signing of an earnest money agreement in Starkweather v. Shaffer (1972), 262 Or. 198, 497 P.2d 358, 360, but that was a case involving intentional deceit on the part of the realtor. A fiduciary relationship applies when the parties are not on equal footing, which does not appear to me to be the case here. However, we have held that as between a realtor and the seller, a fiduciary relationship does arise, especially after the listing agreement has been signed. Carnell v. Watson (1978), 176 Mont. 344, 578 P.2d 308.1 would concede, for the sake of argument here, that prior to the execution of the listing agreement, a fiduciary relationship existed between the owners (Moore) and the real estate agent (Lyle), although this has not been specifically held to be true in Montana until now.
Even so, the duty of the fiduciary (Lyle) to make full disclosure to his beneficiary (Moore) does not apply where the beneficiary has equal and full opportunity, or the means at hand, to acquire knowledge of the facts on his own. It is stated in Lee v. Stockmen's Nat. Bank (1922), 63 Mont. 262, 284, 207 P. 623, 630, that:
“When it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth . .. of any representations made to him, his reliance upon such representations made to him, however false they may have been, affords no ground of complaint *282 (citing cases).”
See also, Lowe v. Root (1975), 166 Mont. 150, 156, 531 P.2d 674, 677.
Here, the Moores, each of whom can read, and of whom the husband especially has a long experience in contractual matters, had before them in its entirety, the one-page listing agreement with its terms set out for their reading. In that situation they are in no different position than any other prospective contractor, absent fraud or coercion, in their duty to read and know the contents of any agreement they sign. It will not suffice for them to say later they never read the instrument before affixing their signatures, or did not understand the obligations imposed by the contract. Guthrie v. Halloran (1931), 90 Mont. 373, 380, 3 P.2d 406, 408.
The exceptions to the rule, of course, are fraud or coercion. It is injudicious to hold that the plaintiff here defrauded the Moores. The District Court did not find so, and under ordinary appellate rules, we are bound by fact determinations of the District Court. Rule 52(a), Mont.R.Civ.P. The record does not show any act or representation by Lyle which led the husband Moore to sign without reading. The grounds relied on by the majority to show the wife was misled are paper-thin, and were rejected by the District Court. In fact, the husband testified he read over the listing agreement a few days later and understood it. It was with that knowledge that he withdrew from the contract before the time expired. He did not move to rescind the contract. Rather Moore testified emphatically that the reason he withdrew Lyle’s authority was that Moore had reached the conclusion the sale to the Kansan was void under Canadian law.
It should be made clear that the Moores were at all times aware of the size of the commission involved for a total selling price of $220,000 under their agreement. The husband Moore had in his possession defendant’s exhibit 2, which he produced at trial, and which was given to him by Lyle prior to the execution of listing agreement, which shows on it “commission 6% of selling price $13,200.00.”
*283 The majority opinion that Lyle committed a fraud goes against the warp of the evidence. There is every indication that he acted fairly: He found a buyer who would pay $ 15 more per acre than the Moores could find on their own; the length of time of the listing agreement was 28 days, certainly not a long time for an exclusive listing; he procured an attorney to ascertain what the Canadian law required. The listing agreement which he presented to the Moores was a standard one, and its provisions respecting withdrawal are the common provisions one finds in the real estate business in Montana. For doing business in the ordinary way, he has been found fraudulent. Not only does he lose that commission, his attorney fees and costs, but he has now been subjected to attorney fees for the other side. I cannot agree with that result.